Cynthia June **KENNEDY**, b/n/f Rita
Faye Kennedy, and Rita Faye Kennedy,
Individually, Next of Kin of Carlis Ray
Kennedy, Deceased, Appellees,

v.

**CITY OF SPRING CITY**, Tennessee
and Officer Clyde Henderson,
Appellants.

Supreme Court of Tennessee,
at Knoxville.

Nov. 6, 1989.

Robert H. Watson, Jr., John C. Duffy,
Watson, Reeves & Beeler, Knoxville, for
appellants.

Roger L. Ridenour, Philip R. Crye, Jr.,
Ridenour & Ridenour, Clinton, for appel-
lees.

## OPINION

**PER CURIAM.**

This case involves the liability of a police
officer, and the City by which he is em-
ployed, where injury or death arises out of
a police pursuit of a suspected law violator.

Carlis Ray Kennedy sustained fatal inju-
ries when the pickup truck he was driving
was struck by an automobile driven by
Richard L. Thomas, who was at the time
being pursued by a police cruiser driven by
Officer Clyde Henderson. Suit was
brought by the next of kin of Mr. Kennedy
against Richard Thomas, Officer
Henderson, and the City of Spring City,
Tennessee, the employer of Mr. Henderson.

After a non jury trial, the trial judge
awarded plaintiffs a judgment against all
defendants in the amount of $100,000.00.
This judgment was affirmed on appeal of
the City of Spring City and Officer
Henderson.

The tragedy occurred at approximately
9:00 p.m., on April 16, 1986, on U.S. High-
way 27 in Rhea County near the Spring
City city limits. Earlier that day, Thomas
had stolen an automobile in Georgia, and
he and a fourteen year old female compan-
ion were driving north to an unknown des-
tination. When they reached Rhea County,
near Dayton, Tennessee, a deputy sheriff
attempted to stop the Thomas automobile
for speeding. Thomas refused to stop and
wrecked the automobile he was driving in
the chase that followed. Thomas and his
companion fled on foot. Shortly there-
after, they were seen stealing a second
automobile. The theft was reported imme-
diately. Officer Henderson, the only police
officer on patrol duty in Spring City, was
alerted by radio dispatches of the theft, the
description of the automobile and its occu-
pants, the license number of the stolen
automobile, and the fact that the stolen
automobile was last seen moving north-
wardly on U.S. Highway 27 toward Spring
City.

Officer Henderson parked his police
cruiser perpendicular to the highway so
that he could view passing automobiles.
He observed an automobile of the general
description of the stolen automobile pass
and stop behind an automobile at a traffic
signal in Spring City. Officer Henderson
pulled onto the highway with one automo-
bile between him and the suspected stolen

automobile. Thomas drove to the next traffic light and stopped. The automobile behind Thomas moved into the left turn lane, placing the police cruiser directly behind Thomas. Officer Henderson verified the automobile license number as being that of the stolen automobile, notified the dispatcher of this fact and of his intention to stop Thomas. When the traffic signal turned green, Officer Henderson turned on the blue lights on the police cruiser as a signal to Thomas to pull over. Thomas sped up, passed a pickup truck by using the center turn lane and proceeded to run a red light at the next intersection. Officer Henderson then turned on his siren, and set out in pursuit of Thomas. He notified his dispatcher of the pursuit and requested the dispatcher to notify the adjacent county for assistance; however, the nearest officer to assist in Roane County was twenty-five miles away. Officer Henderson pursued the Thomas automobile "less than a mile," when the Thomas automobile entered a "slight curve", crossed the center line of the highway and hit the Kennedy pickup truck head-on. U.S. Highway 27 was straight from the point where Thomas ran the red light until the point of impact. The vehicles passed no traffic either way from the time the pursuit began until the collision between the Thomas and Kennedy vehicles.

Officer Henderson did not know the speed he was driving in the chase. He testified that before the collision he had "started dropping back", explaining that "[w]ell, he wasn't stopping.... there was not any point in staying on his bumper if he wasn't going to stop."

Mr. Thomas testified that his automobile reached a speed of eighty-five miles per hour at one point in the chase. He also testified that he wrecked because the steering on the stolen automobile "wasn't too good," he was not an experienced driver, and just "couldn't steer it." The record shows that the steering and brakes on the stolen automobile were in good condition.

Dr. George Kirkham, an associate professor in the School of Criminology at Florida State University, testified that "a solo officer should never attempt the apprehension of a felony suspect in a vehicle situation, without obtaining additional assistance from other law enforcement personnel and without, where possible, planning the location, the time of the particular stop to be made." He reasoned that the fleeing felon would be more likely to flee where he knew that only one officer was in pursuit than he would if he was confronting more than one officer. He also testified that there was "no exigent circumstance that would warrant a deviation or departure from this well established procedure."

Trooper Fred T. Ewton, who investigated the accident, testified he would want assistance from another officer in making a felony stop, and would not have initiated emergency equipment without such assistance. He did admit, however, that he had made solo felony arrests.

Both lower courts found that Officer Henderson was negligent in commencing pursuit, pointing out that there was no apparent danger to the public through the operation of the fleeing automobile prior to Officer Henderson's attempting to make an arrest. As the Court of Appeals put it,

> the evidence establishes the officer knew or reasonably should have known that the felon who had just wrecked another vehicle in a high speed chase would again resist arrest by fleeing in a dangerous manner. Moreover, the officer, by electing to attempt the arrest with this knowledge in violation of accepted police standards for a felony arrest in an area where others would likely be, amounted to "a reckless disregard for the safety of others." T.C.A. § 55-8-108.

T.C.A. § 55-8-108(e), which became effective the day before the accident that is the basis of this action occurred, expressly provides that:

> The fact that law enforcement personnel pursue an actual or suspected violator of a law or ordinance who flees from such pursuit shall not render the law enforcement personnel, or his or their employers, liable for injuries to a third party proximately caused by the fleeing party unless the law enforcement personnel

were negligent in his or their conduct and such negligence was a proximate cause of the injuries to the third party.

There was no showing of negligence on the part of Officer Henderson in the operation of his automobile. In *Nevill v. City of Tullahoma*, 756 S.W.2d 226 (Tenn.1988), decided before the above statute became effective, we held that the mere decision of a police officer to pursue a lawbreaker could not be the basis for imposing liability on the officer for the acts of the pursued lawbreaker. As pointed out in that opinion:

> The duty of police officers is to enforce the law and to make arrests in proper case, not to allow one being pursued to escape because of the fear that the flight may take a course that is dangerous to the public at large.
>
> The opposite would, we think, be an unnecessary restriction on the ability of police officers to carry out their duties. In every case where a police officer sought to stop a motorist for a traffic violation [or to make a felony arrest], it would become a jury question whether the act of the officer was the proximate cause of any harm the motorist might cause in trying to avoid arrest. In our judgment any police officer would hesitate to make an arrest involving a moving automobile within or close to a city for fear that the subject being arrested would flee and cause harm to others for which the officer might be held responsible.

The Court also agreed with the quoted statement from *Reed v. City of Winter Park*, 253 So.2d 475, 477 (Fla.App.1971),

> ... that in pursuit of an escaping offender, a police officer who operates his vehicle with due care (in light of the standard by which his conduct should be judged) is not responsible for the acts of the pursued offender, although the pursuit may have contributed to the reckless driving of the pursued since the officer is not obliged to allow him to escape.

Under the *Nevill* decision, and in light of the standard of care set forth in T.C.A. § 55–8–108(e), we find no basis for holding Officer Henderson and his employer, the City of Spring City, liable for damages for the death of Mr. Kennedy. The sole proximate cause of the accident and the resulting death was the negligence of Richard Thomas.

The judgment of the trial court, as affirmed by the Court of Appeals, is reversed, and the cause is dismissed. Costs will be paid by the appellee, and her surety.

DROWOTA, C.J., dissents.

DROWOTA, Chief Justice, dissenting.

I respectfully dissent. I am of the opinion, based upon the concurrent findings of the trial court and the Court of Appeals, that the death of Carlis Ray Kennedy was proximately caused by the joint and concurring negligence of the City of Spring City Police Officer Clyde Henderson, who was acting within the course and scope of his employment, and the negligent conduct of the Defendant, Richard L. Thomas. As I read the majority opinion, Tennessee does not recognize a cause of action for the negligent conduct of a police officer arising out of a police pursuit when an innocent third party is injured. I say this because the Court of Appeals found "there is substantial evidence of the officer's negligence and we concur with the trial court's finding this negligence was a contributing proximate cause of decedent's injuries and resulting death." We thus have concurrent findings of the trial court and the Court of Appeals on the factual question of negligence and proximate cause, and our review of such questions is limited.

As I pointed out in my dissent in *Nevill v. City of Tullahoma*, 756 S.W.2d 226, 234 (Tenn.1988), our review of findings of fact is set out in T.C.A. § 27–1–113, "[t]o the extent that the findings of the chancery court and the Court of Appeals concur, they shall, if there be any evidence to support them, be conclusive upon any review of the facts in the Supreme Court." As Justice Tomlinson stated in *Hoover Motor Exp. Co., Inc. v. Clements Paper Co.*, 193 Tenn. 6, 9, 241 S.W.2d 851, 852 (1951), "[i]f there is any material evidence to sustain

the concurrent finding of fact then the Supreme Court is bound thereby not only as to that finding but as well to an inference or conclusion reasonably drawn from the evidence that it is a fact." In *Howard v. Haven*, 198 Tenn. 572, 577, 281 S.W.2d 480, 482 (1955), Chief Justice Neil stated that factual issues on which the trial court and Court of Appeals made concurrent findings were foreclosed for further review by the Supreme Court. *See, Arnold v. Hayslett*, 655 S.W.2d 941, 947 (Tenn.1983). Thus, our review of the factual issues involved in this case is limited, if not foreclosed.

Judge Franks, speaking for the Court of Appeals, points out that "[I]t is clear from Officer Henderson's testimony that he approached the attempted arrest as he would an ordinary traffic violation. He testified he expected the vehicle to stop when he turned his blue lights on and observed there are 'not very many that don't stop.' This, despite the knowledge that he suspected this operator was the same person who had earlier fled another pursuing officer, wrecking another vehicle and had stolen this vehicle shortly before the attempted stop." The Court of Appeals later states: "In high speed chase cases the issue is whether the officer breached a standard of care applicable to police officers in the discharge of their duty to suppress lawless conduct. *Smith v. Nieves*, 197 N.J. Super. 609, 485 A.2d 1066 (1984). Stated another way, the issue is whether the pursuit was reasonable under the circumstances, *Simmen v. State*, 55 N.Y.2d 924, 434 N.E.2d 242, 449 N.Y.S.2d 173 (1982), and whether the conduct of the arresting officer constituted 'common and accepted good police practices,' *Myers v. Town of Harrison*, 438 F.2d 293 (2d Cir.), *cert. denied* 404 U.S. 828 [92 S.Ct. 64, 30 L.Ed.2d 57] (1971)."

In the case at bar, we have the testimony of Trooper Fred Ewton, who investigated the accident, and of Dr. George Kirkham, Plaintiff's expert witness, both of whom testified that in making a felony stop they would not have initiated emergency equipment without assistance from another officer. Dr. Kirkham stated that the actions of Officer Henderson "were very seriously violative of well-established police standards and procedures." These witnesses' testimony certainly constitutes "material evidence to sustain the concurrent findings of fact" and we are bound thereby. This is why I must assume that Tennessee now falls within the minority view that no cause of action exists against police officers for their negligent conduct in a high speed chase where the pursued vehicle strikes and injures an innocent third party. *See, Biscoe v. Arlington County*, 738 F.2d 1352, 1365–6 (D.C.Cir.1984), *cert. denied* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); *Tetro v. Town of Stratford*, 189 Conn. 601, 458 A.2d 5, 8 (1983).

The majority opinion appears to place emphasis on the 1986 amendment to T.C.A. § 55–8–108 by citing Section (e) before its conclusion that "[t]here was no showing of negligence on the part of Officer Henderson in the operation of his automobile." Section 108(e) states:

"The fact that law enforcement personnel pursue an actual or suspected violator of a law or ordinance who flees from such pursuit shall not render the law enforcement personnel, or his or their employees, liable for injuries to a third party proximately caused by the fleeing party *unless* the *law enforcement personnel were negligent* in his or their conduct *and such negligence was a proximate cause of the injuries to the third party.*" [Emphasis added.]

Under the emphasized portions of the recent amendment if any law enforcement personnel are negligent in their conduct and such negligence was a proximate cause of the injuries to the third party, then they are liable. T.C.A. § 55–8–108 does not confer immunity from tort liability for negligence, particularly in view of the wording of Section 108(b)(3) "so long as he does not endanger life or property." Section 108(d) sets out the standard of care required of the driver of an authorized emergency vehicle as "the duty to drive with due regard for the safety of all persons" under the existing circumstances. The duty owed un-

der the statute extends to "all persons" including an innocent third party.

As stated earlier, two courts have found negligence on the part of Officer Henderson and it is, therefore, difficult to see how the majority reaches its conclusion of "no showing of negligence on the part of Officer Henderson." The majority opinion fails to explain why the concurrent findings of the trial court and the Court of Appeals are not binding on this Court, when there is clearly "evidence to support" their findings. T.C.A. § 27–1–113.

The Court of Appeals concludes its well-reasoned opinion by stating: "the evidence establishes the officer knew or reasonably should have known that the felon who had just wrecked another vehicle in a high-speed chase would again resist arrest by fleeing in a dangerous manner. Moreover, the officer, by electing to attempt the arrest with this knowledge in violation of accepted police standards for a felony arrest in an area where others would likely be, amounted to 'a reckless disregard for the safety of others.' T.C.A. § 55–8–108."

I would affirm the judgment of the trial court and the Court of Appeals finding that the death of Carlis Ray Kennedy was proximately caused by the joint and concurring negligence of Officer Henderson and Richard L. Thomas.