William Hall Paxton McCLENAHAN, husband & personal representative of the Estate of Lesa Karean McClenahan; as father of William Paul Preston McClenahan and Princess Karean McClenahan, deceased minors; and as father of Moriah Paige McClenahan, a minor, Plaintiff–Appellant,

v.

Alan D. LAWHORNE, Glen A. Cooley, and City of Cleveland, Tennessee, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

June 8, 1992.

Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Jimmy W. Bilbo, with Logan, Miller & Bilbo, Cleveland, for appellant.

Robert H. Watson, Jr., and John C. Duffy, with Watson, Hollow & Reeves, Knoxville, for appellee.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

This suit is for the wrongful death of Plaintiff's wife and two children and personal injuries to a third child resulting from the automobile in which they were riding being struck at an intersection by an automobile being driven at a high rate of speed by an escaping felon while being pursued by a police officer of the City of Cleveland.

The events leading up to this unfortunate accident had their origin in the theft of a 1981 model Pontiac automobile by Defendant Alan Lawhorne in Athens, Tennessee. Soon after the theft, Lawhorne was seen on Interstate 75 traveling in a northerly direction toward Cleveland. Sgt. Steve Castello, of the Cleveland police force was on duty at the time and received a radio broadcast to be on the lookout for the blue Pontiac. He was given a description of the driver and was told the Pontiac was low on gasoline and there was a fully loaded 12–gauge shotgun in the vehicle. Sgt. Castello went to the 25th Street exit of Interstate 75 where he met Tennessee Highway Patrolman Tom Seymour who was at the same location and also on the lookout for Lawhorne and the Pontiac. As they waited, the Pontiac came off of Interstate 75 onto the ramp in their direction. Sgt. Castello was driving an unmarked police car and he fell in behind Lawhorne. Trooper Seymour was driving a fully marked Highway Patrol car and he followed immediately behind Sgt. Castello. Lawhorne stopped on the ramp at the intersection of 25th Street and waited for traffic to clear. He then turned right and headed east on 25th Street. Lawhorne was travel-

ing below the speed limit and Sgt. Castello got close enough to him to get the car tag number and confirmed by radio it was the stolen automobile. This radio dispatch was clocked at 11:30:45 a.m. After confirming the license number of the Pontiac to be that of the stolen car, Sgt. Castello turned on his blue blinker lights signaling Lawhorne to stop. Lawhorne ignored the blinker lights and when the vehicles were 0.6 of a mile from the intersection of 25th Street and Peerless Road Castello activated his siren. At about that time, according to the affidavits of Plaintiff's witnesses, Lawhorne speeded up to around 50 to 55 miles per hour, with Sgt. Castello's vehicle described as being "bumper-to-bumper" with Lawhorne's car and Trooper Seymour immediately behind Castello. Witnesses said the vehicles changed lanes, weaved in and out of traffic and even drove on the shoulder of the road and into the turn lane just prior to the intersection of Peerless Road and 25th Street. When the vehicles were about 0.2 of a mile from the intersection, Lawhorne suddenly accelerated his speed up to an estimated 70 to 80 miles per hour, with Sgt. Castello and Trooper Seymour remaining in close pursuit. Just before the Lawhorne vehicle reached the intersection of Peerless Road the traffic light at the intersection turned from green to red on 25th and from red to green on Peerless Road. The deceased, Lesa Karean McClenahan, was operating her Toyota automobile in a northerly direction on Peerless Road. As she entered the intersection with 25th Street and started to make a left turn, her car was hit broadside by the Pontiac driven by Lawhorne traveling at a speed estimated at 79 miles per hour.

The record also shows Sgt. Castello's car left skid marks on the pavement leading from the right-hand lane to the left-hand lane of the intersection where his car came to rest. The skid marks indicated the car had skidded through the intersection but made no contact with any other vehicle.

Lesa McClenahan died as a result of the injuries she received in the accident. A viable fetus which she was carrying, named Princess, was born dead after the accident. Plaintiff's son, William, also died from inju-

ries and his son, Moriah was seriously injured.

The Plaintiff, William Hall McClenahan, as the husband of Lesa McClenahan and father of the three children, filed suit against the Defendants named above for the wrongful death of his wife and two children and the personal injuries received by the other child. A former appeal as to the Defendant, Glen Cooley, has been decided by our supreme court. *See McClenahan v. Cooley,* 806 S.W.2d 767 (Tenn.1991).

The only issue before this court on appeal relates to the question of liability of the City of Cleveland as the employer of Sgt. Castello at the time of the accident. The complaint alleged Sgt. Castello was an employee of the City of Cleveland as a police officer and while on duty "on the busiest stretch of roadway in Cleveland, Tennessee, and heading toward the busiest intersection in Cleveland, Tennessee, at the lunchtime hour on a Friday, Castello suddenly engaged his blue lights and siren. As a result, the Defendant, Alan D. Lawhorne, only after seeing the blue lights and hearing the sirens, attempted to evade his pursuers. A high-speed chase ensued where Castello chased Lawhorne at speeds in excess of 80 miles per hour approaching the most dangerous intersections in the City. Such chase was made without regard to the safety of the traveling public and under circumstances where Castello knew:

"(a) The chase was unreasonably dangerous;

"(b) The chase would not be able to effectuate a stop before endangering the lives and safety of others;

"(c) The chase was unnecessary;

"(d) He was violating standards applicable to the initiation and maintenance of a chase;

"(e) He was violating the speed limits of 30, 35 and 40 miles per hour;

"(f) The intersection into which he was chasing Lawhorne was so constructed that certain vehicles would be unable to observe the chase and thus avoid its danger;

"(g) The intersection into which he was chasing Lawhorne was controlled by

traffic activated lights which did not make allowance for 85 miles per hour traffic."

The complaint alleged the Plaintiff's damages were the direct and proximate result of Sgt. Castello's negligence.

The City, for answer, admitted Sgt. Castello was its employee at the time of the accident and was on duty as an officer at the time. It denied the actions of Sgt. Castello were of such nature as to be the direct and proximate cause of the injuries received by the McClenahans. It denied Officer Castello failed to maintain under control the vehicle he was operating or that he was operating his vehicle improperly at a speed which was excessive under the conditions then and there existing. As an affirmative defense it said the conduct of Defendant Alan Lawhorne was the proximate cause of the injuries received in the accident. It said Sgt. Castello was operating his vehicle in compliance with T.C.A. § 55–8–108, that the City was immune from suit under T.C.A. §§ 29–20–101, et seq., and 29–20–205 and the actions of Sgt. Castello were discretionary. It denied it was liable to the Plaintiff in any amount.

The City filed a motion for summary judgment, saying that as a matter of law Sgt. Castello's pursuit of Alan Lawhorne was not the proximate cause of the collision of the Lawhorne vehicle and the McClenahan vehicle; that as a matter of law Lawhorne's negligence was the proximate cause of the McClenahans' injuries. Also, the city was immune from suit under T.C.A. § 29–20–205(1) because Castello's decision to pursue Lawhorne was a discretionary function.

In support of its motion for summary judgment the City filed the affidavits of Sgt. Castello, Trooper Seymour, and Robert Refner. The City also relied upon the holdings of the supreme court in the case of *Nevill v. City of Tullahoma,* 756 S.W.2d 226 (Tenn.1988) and *Kennedy v. City of Spring City,* 780 S.W.2d 164 (Tenn.1989). The Plaintiff filed countervailing affidavits of Defendant Lawhorne and other witnesses who saw a portion of the chase.

The trial court, after the hearing on the motion for summary judgment, took the matter under advisement and later entered an order sustaining the motion for summary judgment and dismissed the complaint as to the City of Cleveland.

The Plaintiff has appealed, saying the court was in error. We cannot agree, and affirm.

The Appellant, in his brief, has correctly cited numerous cases which hold that "the summary judgment procedure is not to be regarded as a substitute for trial of disputed factual issues," and "it is only when there is no disputed issue of material fact that summary judgment should be granted." In the record before us there are two issues which are in sharp dispute in the affidavits filed by the Defendant and the Plaintiff. Those issues relate to the speed of the vehicles during the hot pursuit chase and the proximity of Sgt. Castello's vehicle to the Lawhorne vehicle during the chase. Accepting the version of Plaintiff's witnesses as to speed and proximity of the vehicles during the chase, summary judgment is appropriate under the holdings in *Nevill,* 756 S.W.2d 226, *supra,* and *Kennedy,* 780 S.W.2d 164, *supra,* and for this reason the disputed issues fail to rise to that of a "material fact."

In his order sustaining summary judgment, the court said: "The Court has carefully considered all of the above evidentiary material submitted by the parties, the oral and written argument of counsel and the record as a whole. After consideration of same, the Court is of the opinion that any factual dispute amongst witnesses' affidavits or other testimony with respect to the speed of Sergeant Castello's vehicle or its proximity to that of the suspect is not material to the issues in this case. The Court is of the opinion that under either parties' version of the disputed facts, together with those facts not in dispute such as the very brief time and distance involved, the case is governed by the Tennessee Supreme Court decisions of *Kennedy, supra* and *Nevill v. City of Tullahoma,* 756 S.W.2d 226 (Tenn.1988). The Court finds that the sole proximate cause of Plaintiffs' injuries in this case was the negligence of the suspect, Allen Lawhorn."

We concur with the chancellor and his decree is affirmed in accordance with Rule 10(b) of the Rules of the Court of Appeals. The cost of this appeal is taxed to the Appellant and the case is remanded to the trial court for any further necessary proceedings.

FRANKS and McMURRAY, JJ., concur.

FRANKS, Judge, concurring.

Neither the Trial Court nor our Court could hold the complaint stated a cause of action in view of the Supreme Court cases of *Nevill v. City of Tullahoma*, 756 S.W.2d 226 (Tenn.1988), and *Kennedy v. City of Spring City*, 780 S.W.2d 164 (Tenn.1989). The facts of the *Kennedy* case are particularly analogous to the allegations in this case, but the facts are not paramount. In my view, both *Nevill* and *Kennedy* were wrongly decided. These cases allow law enforcement officials to indiscriminately engage in high speed chases under any and all circumstances, without regard to the public at large. All activities, including those of law enforcement officials, should be governed by the rule of reasonableness, which these cases do not concede.

For the reasons set forth in my opinion in the case of *Kennedy v. City of Spring City* in our Court, *Nevill* and *Kennedy* should be overturned by the Supreme Court. As an update, in *Lowrimore v. Dimmitt*, 310 Or. 291, 797 P.2d 1027 (1990), the Oregon Supreme Court observed in an action for injuries suffered by a plaintiff struck by the pursued vehicle:

"The pursuit continued at speeds of 80–90 miles per hour through populated sections of Salem, in which the posted speed limit was 25 mph. Before reaching the intersection where the collision between Dimmitt's car and the plaintiff's car occurred, Dimmitt and the officer went through a 4–way stop without stopping. Continuing a high speed chase under the circumstances present in this case might be found to create a risk of harm to others using the highway. A trier of fact might reasonably find that the pursued driver would injure third persons as a foreseeable consequence of the pursuit by the police officer. Dimmitt's actions may have been a more direct cause of the plaintiff's harm in the sense that the collision involved their cars, but given the nature of the risk created by the high speed pursuit, injury to third persons may be found to be a foreseeable result of the officer's continuation of the pursuit."

I reluctantly concur with the result reached in the majority opinion.