Kathleen **HAYNES**, Plaintiff–Appellant, Bobby Henson and Martha Henson Taylor, as Parents and Natural Guardians of Rebecca Ann Henson, Deceased, Plaintiffs–Appellants, David Scroggins, d/b/a Scroggins Used Cars, Plaintiff–Appellant,

v.

**HAMILTON COUNTY, Tennessee,** Defendant–Appellee.

Supreme Court of Tennessee, at Knoxville.

Aug. 29, 1994.

Robert W. Sauser, Luther, Anderson, Cleary & Ruth, P.C., Chattanooga, for appellants.

B. Stewart Jenkins, Jenkins & Bradshaw, Chattanooga, for appellant Kathleen Haynes.

Russell King, Chattanooga, for appellants Bobby Henson and Martha Henson Taylor.

Roger E. Jenne, Jenne, Scott & Sellers, Cleveland, for appellant David Scroggins.

O. Michael Carter, Sp. Counsel to Office of Hamilton County Atty., Chattanooga, for appellee.

John A. Day, Past President, TTLA, Nashville, J. Anthony Farmer, President, TTLA, R. Sadler Bailey, Member, TTLA, Memphis, for amicus curiae, Tenn. Trial Lawyers Ass'n.

Robert H. Watson, Jr., John C. Duffy, Watson, Hollow & Reeves, Knoxville, for amicus curiae, Tenn. Mun. League.

## *OPINION*

ANDERSON, Justice.

This appeal arises out of a high-speed police chase of a traffic violator which ended in tragedy when the violator's car crossed the center line out of control and collided with a third vehicle, killing all three teen-age occupants.

We granted this appeal to reconsider this Court's holding that law enforcement personnel are not liable for injuries resulting from an accident between a vehicle being pursued by the police and an innocent third party because, as a matter of law, police "conduct" in initiating or continuing the high-speed chase is not a proximate cause of the accident. *See Kennedy v. City of Spring City,* 780 S.W.2d 164 (Tenn.1989) (Drowota, J., dissenting), and *Nevill v. City of Tullahoma,*

756 S.W.2d 226 (Tenn.1988) (Drowota, J., dissenting).

Relying on our previous decisions, the trial court in this case granted the defendant, Hamilton County's motions for summary judgment, and the Court of Appeals affirmed.

We have concluded that where negligent police conduct exists in initiating or continuing a high speed chase, it is possible for that negligent conduct to be the proximate cause of injuries to innocent third parties. We reach that conclusion because we are convinced our holdings in *Nevill* and *Kennedy* interpret the statute, Tenn.Code Ann. § 55–8–108(e) (1988), too narrowly by limiting negligent police "conduct" to the physical operation of the officer's own vehicle and by excluding all other conduct, including the police officer's decision to initiate or continue the high-speed chase. The rule we now adopt follows the public policy established by the legislature, comports with the clear language of the statute, and is consistent with the better-reasoned rule adopted by a growing majority of the states. Accordingly, the Court of Appeals' judgment is reversed and the case remanded to the trial court. To the extent that the decisions in *Nevill* and *Kennedy* conflict with our ruling herein, they are overruled.

### FACTUAL BACKGROUND

On Saturday evening, March 17, 1990, at approximately 7:00 p.m., Gregory Allen Gilliam, drove a red Corvette onto Dayton Pike from the Golden Gallon market located at Sequoyah and Dayton Pike in Soddy Daisy, Tennessee. At the same time, Sergeant Alan Brown of the Hamilton County Sheriff's Department drove onto Dayton Pike from Sequoyah, directly behind Gilliam. Sergeant Brown noticed that the Corvette had no taillights. After following Gilliam for a short distance, Sergeant Brown observed the Corvette accelerate and pass a car by driving in the left hand turn lane, fishtailing as it did so. At that point, Sergeant Brown determined that Gilliam was speeding and driving recklessly by traveling 55 miles per hour in a 40 mile-per-hour speed zone.

Intending to stop Gilliam, Sergeant Brown turned on his blue lights. Instead of stopping, however, Gilliam continued to accelerate. Sergeant Brown turned on his siren, and a high-speed chase ensued. Gilliam's speed reached, and perhaps exceeded, 100 miles per hour, with Sergeant Brown in hot pursuit with siren screaming and blue lights flashing. Both vehicles passed a number of cars, both oncoming, and traveling in the same direction. Although Sergeant Brown did not turn off his lights or his siren during the two and one-half to three mile chase, he had slowed his vehicle in heavy traffic in the 8400 block of Dayton Pike when he saw a ball of fire about a block away. Gilliam had lost control of the Corvette, crossed the center line, and collided head-on with a vehicle being driven by 19–year–old James Guffey, and occupied by Guffey's half-sister, Catherine Forester, age 16, and his friend, Rebecca Henson, age 17. All three teenagers died in the collision. Sometime later, it was determined that the Corvette Gilliam was driving had been reported as stolen.

Wrongful death actions were instituted against Hamilton County by the parents of the dead teenagers. The owner of the Corvette also sued for property damage. By agreement, the cases were consolidated for trial. The plaintiffs' allegations of negligence against Hamilton County were substantially the same, specifically that:

> it was unreasonable, unnecessary and grossly negligent for the Sheriff's deputy to continue to pursue the Defendant Gilliam at speeds in excess of 100 miles per hour given the conditions existing on the highways at the time and further given the ability of law enforcement agencies to take other more appropriate means to intercept and stop the Defendant Gilliam, any of which procedures would have been more appropriate than the high speed chase which resulted in the death of three individuals.

Hamilton County moved for summary judgment as to all plaintiffs, and the trial court judge granted the motions, concluding that Sergeant Brown's conduct in initiating and continuing the pursuit of Gilliam was not, as a matter of law, the proximate cause of

the accident that resulted. The Court of Appeals reluctantly affirmed the trial court, relying on our previous decisions.

We articulate below the reasons for the adoption of a new rule which requires a reversal of the Court of Appeals. In applying the rule, we consider the foregoing facts in the light most favorable to the plaintiffs, as we are required to do in an appeal from a summary judgment.

### *"CONDUCT"*

■ We begin our analysis with an examination of the statutes enacted by the legislature which govern the liability of Hamilton County for the actions of its Deputy Sheriff. Tenn.Code Ann. § 29–20–202 (1980) provides that the County's immunity is removed for the negligent operation of a motor vehicle by any employee. Hamilton County, however, remains immune from liability arising from its employees' negligent conduct to the extent authorized by Tenn.Code Ann. § 55–8–108 (1993). That statute, in part, provides:

(a) The driver of an authorized emergency vehicle, ... when in the pursuit of an actual or suspected violator of the law, ... may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this chapter;

(2) Proceed past a red or stop signal or stop sign, **but only after slowing down as may be necessary for safe operation;**

(3) Exceed the speed limits **so long as life or property are not thereby endangered;** and

(4) Disregard regulations governing direction of movement or turning in specified directions.

. . . .

(d) **The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.**

(e) Notwithstanding the requirement of this section that drivers of authorized emergency vehicles exercise due regard for the safety of all persons, no municipality or county nor the state or any of its political subdivisions, nor their officers or employees, shall be liable for any injury proximately or indirectly caused to an actual or suspected violator of a law or ordinance who is fleeing pursuit by law enforcement personnel. The fact that law enforcement personnel pursue an actual or suspected violator of a law or ordinance who flees from such pursuit shall not render the law enforcement personnel, or the employers of such personnel, liable for injuries to a third party proximately caused by the fleeing party **unless the conduct of the law enforcement personnel was negligent and such negligence was a proximate cause of the injuries to the third party.**

(Emphasis added). The statute provides absolute immunity from liability to the County for the injury or death of a fleeing suspect. Certain privileges are also afforded to drivers of emergency vehicles with regard to other persons. However, drivers of emergency vehicles participating in high speed chases are clearly required to exercise "due regard for the safety of **all persons**," including innocent third parties. In addition, such drivers may exceed the speed limit only if they do not endanger life or property. Moreover, the 1986 amendment to the statute—subsection (e)—which deals specifically with such hot pursuit chases, explicitly provides that law enforcement personnel will be liable when the "conduct of the law enforcement personnel was negligent and such negligence was a proximate cause of the injuries to the third party."

Our first inquiry, therefore, is what constitutes negligent "conduct?" In *Nevill, supra,* the trial court concluded, and the Court of Appeals affirmed, that the police officers' negligence, both in commencing pursuit and continuing pursuit of a traffic violator at speeds from 75 to 100 miles per hour for the time and distance involved, and in failing to

obtain permission to engage in the pursuit in violation of the procedures of the Tullahoma Police Department, proximately caused the death of the passenger in the pursued car. Despite the concurrent findings of fact by the trial court and the Court of Appeals, the *Nevill* Court reversed and held, as a matter of law, that the police conduct in initiating or continuing the chase was not the proximate cause of the accident, and that the sole proximate cause of the accident was the negligence of the traffic violator. *Id.,* 756 S.W.2d at 233. Justice Drowota dissented from the majority holding, commenting that the record contained material evidence to support the concurrent findings of fact by both lower courts as to the officers' negligence and proximate cause, and therefore, the findings of fact were conclusive and should not have been reversed as questions of law.

This Court, in *Kennedy, supra,* was again faced with the issue of whether a police officer is liable where an innocent third party is injured or killed as a result of high-speed police pursuit of a suspected law violator. In the *Kennedy* case, both the trial court and Court of Appeals found that the police officer was negligent in commencing the pursuit of a suspect and specifically pointed out that there was no apparent danger to the public until the officer began the pursuit.

The *Kennedy* Court reversed, holding the police officer's conduct in the physical operation of the motor vehicle was not negligent and interpreting the word "conduct" in the statute narrowly to exclude any other police conduct, including the officer's decision to commence pursuit or continue pursuit.[1] Justice Drowota again dissented, commenting that the decision was contrary to the statute and placed Tennessee among the minority of jurisdictions which hold "that no cause of action exists against police officers for their negligent conduct in a high speed chase where the pursued vehicle strikes and injures an innocent third party." *Id.,* 780 S.W.2d at 167.

After reviewing the relevant authorities, including a number of recent decisions, we conclude that Justice Drowota was correct and that the *Kennedy* Court erroneously limited the meaning of the term "conduct."

In interpreting a similar statute to Tennessee's, Maryland's highest court reasoned:

> Negligent operation of a car is not limited to the negligent manipulation of the gas pedal, steering wheel, or brake pedal, such as involved in speeding, failure to pay attention to what may be in front of the vehicle, failure to apply the brakes, etc. A **decision to operate or continue operating the car,** when a reasonable person would not do so, clearly can be "negligent operation." For example, if one decides to operate or to continue operating a motor vehicle when he is dizzy or otherwise ill, he may be guilty of negligent operation. A decision to operate a car or to continue operating a car knowing that brakes are faulty may obviously constitute the "negligent operation" of the vehicle.

*Boyer v. State,* 323 Md. 558, 594 A.2d 121, 129 (1991) (emphasis added) (internal citations omitted).

We agree with the Maryland court's interpretation and observe that it is immediately apparent that "conduct," as used in Tenn. Code Ann. § 55–8–108(e), is a broader term than the statutory language (negligent operation of an automobile) being construed by the Maryland Court. We see no reason for applying to the word "conduct" a more restrictive interpretation. We therefore conclude that negligent "conduct" encompasses more than the "physical operation of a motor vehicle" and includes the decision to commence or continue a high speed chase when a reasonable police officer would not do so. *Cf. Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (1983); *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360, 1364–65 (1975) (also holding that a police officer's negligent decision to initiate or continue a high speed chase may constitute negligent "operation" of a vehicle).

---

**1.** *See also Garren v. City of Englewood,* 854 S.W.2d 892 (Tenn.App.1993) *(perm. app. denied* 6/1/93) and *McClenahan v. Lawhorne,* 849 S.W.2d 773 (Tenn.App.1992) *(perm. app. denied* 10/26/92) (interpreting *Kennedy* and *Nevill* as precluding liability as a matter of law based on facts almost identical to those involved here).

We recognize that police officers have a duty to apprehend law violators and that the decision to commence or continue pursuit of a fleeing suspect is, by necessity, made rapidly. In the final analysis, however, a police officer's paramount duty is to protect the public. Unusual circumstances may make it reasonable to adopt a course of conduct which causes a high risk of harm to the public. However, such conduct is not justified unless the end itself is of sufficient social value. The general public[2] has a significant interest in not being subjected to unreasonable risks of injury as the police carry out their duties. We agree with the Texas Supreme Court's observation, that "[p]ublic safety should not be thrown to the winds in the heat of the chase." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992).

 Accordingly, we conclude that an officer's decision to commence or continue a high-speed chase is encompassed within the statutory term "conduct" and may form the basis of liability in an action brought by a third party who is injured by the fleeing suspect, if the officer's decision was unreasonable. In determining whether the decision to initiate or continue pursuit is reasonable, the risk of injury to innocent third parties should be weighed against the interest in apprehending suspects. Factors relevant to that determination include the speed and area of the pursuit, weather and road conditions, the presence or absence of pedestrians and other traffic, alternative methods of apprehension, applicable police regulations, and the danger posed to the public by the suspect being pursued. *Boyer v. State*,

594 A.2d at 137; *Fiser v. City of Ann Arbor*, 339 N.W.2d at 417. Numerous police agencies have already recognized the high risk of harm to the public from high speed chases and, as a result, have adopted regulations to govern the conduct of their officers that include some or all of the factors set out above. *See e.g. Nevill, supra; Tetro v. Town of Stratford*, 189 Conn. 601, 458 A.2d 5, 7 (1983); *City of Pinellas Park v. Brown*, 604 So.2d 1222, 1224 (Fla.1992).[3] Nonetheless, the factors listed above are not exclusive, and overall, a police officer's conduct should be viewed in light of how a reasonably prudent police officer would respond under the circumstances, and not judged with the perfect vision afforded by hindsight. *Id.* Having determined that a police officer's decision to commence or continue pursuit may constitute negligent "conduct," we now consider the issue of proximate cause.

### PROXIMATE CAUSE

 In Tennessee, no claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991).

This Court has previously held that in Tennessee, a three-pronged test for proximate cause is applied:

**2.** "More than 500 Americans die and over 1,000 sustain major injuries each year as a result of rapid police pursuit of lawbreakers, most of whom are guilty of only minor traffic offenses.... [O]ne pursuit in five leads to a traffic fatality (and) in only one percent of the cases was someone in the car wanted for violent crimes...." *Kuzmics v. Santiago*, 256 Pa.Super. 35, 389 A.2d 587, 590 (1978) (citing in a footnote Survey by Physicians for Automotive Safety reported to American Medical Association annual convention, June, 1968, quoted in Meyer, § 4.32, p. 14 (1970)).

According to statistics maintained by the National Highway Transportation Safety Administration, from 1980 through 1992 high speed pursuits in Tennessee resulted in 104 fatalities.

**3.** "Increasingly alarmed by high speed pursuits that are killing hundreds of people every year, police departments around the country, as well as state and federal law makers, are clamping down on the wild, Hollywood style chases that sometimes involve caravans of speeding cruisers." *Garren v. City of Englewood*, 854 S.W.2d 892, 893 (Tenn.App.1993), quoting *New York Times* article, December 26, 1992.

According to the proof in this record, Hamilton County had adopted regulations requiring officers to terminate a high-speed pursuit when conditions were unsafe or the suspect persisted in fleeing.

(1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*McClenahan v. Cooley,* 806 S.W.2d at 775.

■ With respect to superseding intervening causes that might break the chain of proximate causation, we have stated that

[t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result. An intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm. An intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonably anticipated.

*McClenahan v. Cooley,* 806 S.W.2d at 775 (internal citations and quotation marks omitted). Proximate cause, as well as superseding intervening cause, are ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *Id.*

Unlike the *Nevill* court, we are unable to conclude, that in all cases, all reasonable persons must agree, as a matter of law, that the conduct of police in commencing or continuing pursuit is superseded by the negligence of a fleeing suspect. We do not consider it beyond the realm of "reasonable anticipation" that a suspect, in an attempt to evade high-speed police pursuit, would in turn flee at a high rate of speed and collide with an innocent third party. *See City of Pinellas Park v. Brown,* 604 So.2d at 1224;

*Fiser v. City of Ann Arbor,* 339 N.W.2d at 418.

Moreover, the *Nevill* Court was applying Tennessee law as it existed prior to the 1986 amendment, by which the General Assembly determined that public policy requires that police officers be liable to innocent third parties for negligent conduct which proximately causes injury. The *Nevill* holding was also, in large degree, based on court decisions from other jurisdictions refusing to impose liability on police as a matter of public policy. The *Nevill* Court's analysis included cases from the following states: Kentucky, Missouri, New York, New Jersey, and Florida, most of which were decided more than 25 years ago. Two of those states, New York and Florida, have recently reconsidered the issue and adopted what is now a substantial and emerging majority view, rejecting the per se rule of no proximate cause as a matter of law in favor of a rule that allows a jury to decide whether negligent police conduct is the proximate cause of injury to innocent third parties.

■ Our research reveals that today only a minority of jurisdictions afford police officers complete immunity, either by statute or by virtue of the per se "no proximate cause rule," when a police officer or the officer's employer is sued by an innocent third party who sustained injuries in an accident with a fleeing suspect. *See e.g. Thornton v. Shore,* 233 Kan. 737, 666 P.2d 655 (1983); *Chambers v. Ideal Pure Milk Co.,* 245 S.W.2d 589 (Ky. 1952); *Pletan v. Gaines,* 494 N.W.2d 38 (Minn.1992) (statutory immunity); *Oberkramer v. City of Ellisville,* 706 S.W.2d 440 (Mo.1986) (En Banc); *Tice v. Cramer,* 133 N.J. 347, 627 A.2d 1090 (1993) (statutory and common law immunity); *Dickens v. Horner,* 531 Pa. 127, 611 A.2d 693 (1992) (statutory immunity); *Lewis v. Bland,* 75 Ohio App.3d 453, 599 N.E.2d 814 (1991) (relying on *Nevill*); *Kelly v. City of Tulsa,* 791 P.2d 826 (Okl.App.1990).

In the majority of jurisdictions, proximate cause is considered to be a question of fact if the plaintiff alleges negligence on the part of police in commencing or continuing pursuit. *See Seals v. City of Columbia,* 575 So.2d 1061 (Ala.1991); *Tetro v. Town of Stratford,* 189

Conn. 601, 458 A.2d 5 (1983); *City of Pinellas Park v. Brown,* 604 So.2d 1222 (Fla.1992); *Mixon v. City of Warner Robins,* 264 Ga. 385, 444 S.E.2d 761 (1994); *Boyer v. State,* 323 Md. 558, 594 A.2d 121 (1991); *Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (Mich.1983); *Smith v. City of West Point,* 475 So.2d 816 (Miss.1985); *Lee v. City of Omaha,* 209 Neb. 345, 307 N.W.2d 800 (1981); *Selkowitz v. Nassau County,* 45 N.Y.2d 97, 408 N.Y.S.2d 10, 379 N.E.2d 1140 (1978); *Lowrimore v. Dimmit,* 310 Or. 291, 797 P.2d 1027 (1990); *Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex.1992); *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360 (1975) (En Banc); *Estate of Aten v. City of Tuscon,* 169 Ariz. 147, 817 P.2d 951 (App.1991); *Stark v. City of Los Angeles,* 168 Cal.App.3d 276, 214 Cal.Rptr. 216 (Cal.App. 2 Dist.1985); *Biscoe v. Arlington County,* 738 F.2d 1352 (D.C.Cir.1984) (applying D.C. law); *Myers v. Town of Harrison,* 438 F.2d 293 (2nd Cir. 1971) (applying New York law); *Schatz v. Cutler,* 395 F.Supp. 271 (D.Vt.1975).

A number of other jurisdictions, either by statute or by case law, consider proximate cause a question of fact if the plaintiff alleges that the police officer's decision to pursue constituted gross negligence. *See Bullins v. Schmidt,* 322 N.C. 580, 369 S.E.2d 601 (1988); *Jones v. Ahlberg,* 489 N.W.2d 576 (N.D.1992); *Colby v. Boyden,* 241 Va. 125, 400 S.E.2d 184 (1991); *Peak v. Ratliff,* 185 W.Va. 548, 408 S.E.2d 300 (1991); *DeWald v. State,* 719 P.2d 643 (Wyo.1986).

We are convinced that the majority rule is the better-reasoned and more persuasive rule, because it recognizes that public safety is the ultimate goal of law enforcement, and that when the risk of injury to members of the public is high, that risk should be weighed against the police interest in immediate arrest of a suspect. The per se rule of "no proximate cause," as a matter of law, adopted in *Nevill* is inconsistent with the existing law in Tennessee as it relates to proximate and superseding intervening causation and with the critical public policy considerations. General principles of proximate and superseding intervening causation previously adopted in Tennessee are to be applied when determining whether police conduct is a proximate cause of an accident between a fleeing suspect and an innocent third party.

## CONCLUSION

After applying the governing rules adopted, we have considered the evidence in the record by the standard required in reviewing an order granting a summary judgment. The evidence has been evaluated in a light most favorable to the plaintiff, the non-moving party, and we have allowed all reasonable inferences and discarded all countervailing evidence. As a result we conclude that the judgment of the Court of Appeals sustaining the summary judgment in favor of Hamilton County must be reversed. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993). Questions of fact exist both as to negligence and proximate cause, which should be submitted to a jury. Accordingly, summary judgment was inappropriate. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the defendant, Hamilton County.

REID, C.J., and DROWOTA, O'BRIEN, and BIRCH, JJ., concur.