IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2010 Session

## TOMMIE HAMPTON v. CITY OF MEMPHIS, TENNESSEE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004090-04       Donna M. Fields, Judge**

**No. W2010-00469-COA-R3-CV - Filed December 14, 2010**

Plaintiff was injured when Defendant Madden drove his vehicle at a high speed and in the wrong direction on an exit ramp of I-40/240 and collided head-on with Plaintiff's vehicle. Plaintiff filed a negligence action against Defendant Madden and against the City of Memphis pursuant to the Governmental Tort Liability Act. In his complaint, Plaintiff asserted Memphis City police negligently pursued Defendant Madden, and that this negligence proximately caused Plaintiff's injuries. The trial court found Plaintiff's injuries were caused solely by the acts of Defendant Madden and entered judgment in favor of the City of Memphis. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Joe M. Rogers, West Memphis, Arkansas, for the appellant, Tommie Hampton.

Barbaralette G. Davis, Assistant City Attorney, and Henry L. Klein, Memphis, Tennessee, for the appellee, City of Memphis.

### OPINION

This lawsuit arises from a motor vehicle accident on the morning of July 16, 2003, in which Plaintiff/Appellant Tommie Hampton (Mr. Hampton) was injured when his vehicle was struck head-on by a Ford Explorer operated by Defendant Jeffrey Madden (Mr. Madden). The accident occurred on the Warford Street exit ramp of westbound I-40/240, where Mr. Madden, having exited the interstate, made a U-turn in order to re-enter the highway and return to Arkansas. Mr. Madden was traveling at a high-rate of speed in the

wrong direction when he collided with Mr. Hampton. When he exited I-40/240, Mr. Madden was being followed by a pick-up truck that, unbeknownst to him, was operated by undercover Memphis City police. Mr. Hampton suffered serious injury as a result of the accident, and incurred medical expenses in excess of $100,000.

On July 15, 2004, Mr. Hampton filed a cause of action pursuant to the Governmental Tort Liability Act ("GTLA") in the Circuit Court for Shelby County against Mr. Madden, the City of Memphis, and four Memphis police officers, individually and in their official capacities. In his complaint, Mr. Hampton asserted Mr. Madden was fleeing what he alleged was a high-speed pursuit by Memphis police officers at the time of the accident. He asserted the police were negligent in their pursuit of Mr. Madden, and that his injuries were proximately caused by the officers' negligence. Mr. Hampton asserted he sustained serious and permanent injuries as a result of the collision. He sought compensatory damages not to exceed two-million dollars and punitive damages.

The City of Memphis ("the City") answered in October 2007, denying Mr. Hampton's allegations and asserting the doctrine of comparative fault. The City further asserted that Mr. Hampton's injuries were directly and proximately caused by the acts of a third party. On October 25, 2007, the trial court entered consent orders dismissing the claims against the police officers in their individual capacities. The trial court also entered a consent order dismissing Mr. Hampton's claim for damages in excess of the $250,000 permitted by the GTLA, and his claim for punitive damages.

Following a three-day bench trial in February 2009, the trial court entered a judgment in favor of the City. In its order, the trial court found that Mr. Hampton's injuries were not proximately caused by the actions of the police officers, but "were the result of a criminal traveling the streets and highways of Memphis, Tennessee under the influence of drugs." The trial court entered a judgment in favor of the City on September 16, 2009. On October 14, 2009, Mr. Hampton filed a motion to amend the trial court's findings and conclusions and to alter and amend the order. The trial court denied the motion on February 1, 2010, and Mr. Hampton filed a notice of appeal to this Court on February 24, 2010.

Upon review of the record, we determined that the trial court's February 2010 order was not a final judgment where Mr. Hampton's claim against Mr. Madden did not appear to have been disposed of by the trial court, and where the trial court had not ruled on Mr. Hampton's February 6, 2009, motion to draw an adverse inference against the City. We issued an order requiring Mr. Hampton to show cause why the appeal should not be dismissed for failure to appeal a final judgment. The trial court subsequently entered an order of voluntary non-suit against Mr. Madden, and an order denying Mr. Hampton's motion to draw an adverse inference. Having determined that the trial court's order now is

final, we turn to the issues raised by Mr. Hampton on appeal.

### *Issues Presented*

Mr. Hampton raises five issues for our review. However, the determinative issue, as we perceive it, is whether the trial court erred in its determination that the actions of the City police officers were not the proximate cause of the injuries sustained by Mr. Hampton in the collision with Mr. Madden's vehicle.

### *Standard of Review*

Causation is a question of fact to be determined by the trier of fact. *E.g., Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005). We review the trial court's findings of fact *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). The trial court's determinations on matters of witness credibility are accorded great deference. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). We therefore will not re-evaluate a trial judge's credibility determinations unless they are contradicted by clear and convincing evidence. *Id.*

### *Discussion*

We begin our discussion with the well-recognized elements of a tort action alleging negligence: (1) a duty of care owed to the plaintiff by the defendant; (2) conduct on the part of the defendant that falls below the standard of care so as to constitute a breach of that duty; (3) an injury or loss suffered by the plaintiff; (4) causation in fact; and (5) proximate or legal cause. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)(citations omitted). The elements of duty and injury are not issues in this case. Rather, the adjudication of this matter in the trial court focused on the questions of breach of duty and causation.

In its September 2009 order, the trial court made no finding with respect to the issue of breach of care, but entered judgment in favor of the City upon finding that the acts of the police did not proximately cause Mr. Hampton's injuries. Thus, although the parties have devoted considerable portions of their briefs to this Court to the question of whether the police were "in pursuit" of Mr. Madden when the accident occurred, and breached the standard of care by failing to follow proper pursuit procedures, this issue is not determinative

-3-

to our disposition of this matter on appeal. Our review of the trial court's judgment is confined to whether the evidence contained in the record preponderates against the trial court's determination that Mr. Hampton did not carry his burden of proof with respect to the element of causation.

The plaintiff in a negligence action is required to prove, by a preponderance of the evidence, two distinct elements of causation: cause in fact and proximate cause. *E.g., Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005)(citations omitted). Both types of causation ordinarily are questions of fact for the trier of fact "'unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.'" *Id.*(quoting *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn.1994) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991))). In order to demonstrate causation in fact, the plaintiff must prove that the defendant's conduct contributed directly to the plaintiff's injury. *Id.*(citations omitted). If the plaintiff's injury would not have occurred "but for" the defendant's conduct, then that conduct is a cause in fact of the injury. *Id.* The defendant's conduct does not need to be the sole cause of the plaintiff's injury, but it must be a cause. *Id.*

Proximate cause concerns the imposition of legal liability following the determination of cause in fact. *Id.* at 719. Proximate cause, or legal cause, limits the chain of causation. *Id.* at 718. Notwithstanding that the plaintiff's injury would not have occurred "but for" the defendant's action, the defendant will not be liable for injuries not substantially caused by his conduct or a reasonably foreseeable result of his conduct. *Id.* at 719. The courts have developed a three-pronged test to establish proximate cause: (1) the conduct of the defendant must have been a "substantial factor" in causing the injury; and (2) no rule or policy relieves the wrongdoer from liability; and (3) the harm or injury could have been reasonably foreseen or anticipated "by a person of ordinary intelligence and prudence." *Id.* (quoting *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991))).

In this case, it is undisputed that undercover police officers traveling in an unmarked pick-up truck followed Mr. Madden onto I-40/240 from the Wal-Mart Store on Austin Peay Highway in Memphis on the morning of the accident. It also is undisputed that Mr. Madden admitted to having used illegal drugs that morning, that medical syringes containing methamphetamine were found in his vehicle following the accident, and that he had purchased and shoplifted Sudafed from the store in order to manufacture crystal methamphetamine. Further, it is not disputed that when Mr. Madden collided with Mr. Hampton, he was traveling the wrong way on the Warford Street exit ramp after having exited I-40/240 onto the ramp and making a U-turn to proceed back up the roadway. After summarizing the testimony, the trial court entered an extremely detailed order and found:

-4-

[Mr.] Madden made the unfortunate decision to travel the wrong way on an interstate exit because he was lost. He was not familiar with the Warford area and had made the erroneous decision to travel against traffic before he even saw the undercover officers. His statements that he traveled faster because of the pickup following him were not believable, in light of all the officers' testimony and the physical evidence.

The trial court found that the officers' actions were not the proximate, legal cause of the collision, and that although Mr. Hampton "suffered horrendous injuries, through no fault of his own, these injuries were the result of a criminal traveling the streets and highways of Memphis, Tennessee under the influence of drugs."

The evidence in the record does not preponderate against the trial court's findings in this matter. Mr. Madden testified that he exited the interstate "[b]ecause [he] thought [he] had lost" the unmarked pick-up truck. He further testified that he did not see the pick-up truck when he exited at the Warford Street exit, that he traveled down the ramp and pulled off onto the shoulder of the roadway, and that he "went to make the U-turn." He stated that he "glanced behind [him], and the truck had come around the bend." Mr. Madden stated that he saw the pick-up truck "as [he] was making a U-turn." Mr. Madden testified that he was not familiar with the exit, and that he thought he was getting back onto the entrance ramp. Mr. Madden also testified that he "picked-up a rate of speed trying as well to get away again." He further testified that he did not see the marked police car that had responded to the undercover officers' call for assistance until he was proceeding back up the exit ramp.

In his brief, Mr. Hampton asserts that the trial court erred in finding that actions of the police did not proximately cause his injuries because "flight from police pursuit that results in injury to [a] third person is well known and documented throughout the County and Tennessee." He asserts that the unrebutted expert testimony in the record establishes that "a criminal suspect in a vehicle will flee from a police chase until he escapes or crashes and will slow down and drive safely when not chased." Mr. Hampton emphasizes that Mr. "Madden's reaction to being chased was typical and resulted in the collision."

Upon review of the testimony, however, there is nothing to support Mr. Hampton's assertion that Mr. Madden knew he was being chased or even followed by the police when he exited I-40/240 at the Warford Street exit, made a U-turn, and proceeded up the exit ramp in the wrong direction in order to re-enter the interstate. On the contrary, Mr. Madden testified that it did not occur to him that the passengers in the pick-up truck were police officers. When asked why he "didn't just pull over and stop" when he noticed he was being followed, Mr. Madden stated, "I had no reason to pull over and stop for somebody[.] I didn't know who they were." As noted above, Mr. Madden testified that he made the U-turn to

return to the interstate before he realized that the pick-up truck was behind him. He further testified that he did not see the marked police cars until seconds before the collision with Mr. Hampton, when he already was proceeding the wrong way on the exit ramp. Mr. Madden stated that he "never touched the brake" after seeing the police cars and before colliding with Mr. Hampton because he "never had time." He testified, "I never seen him (Mr. Hampton). I couldn't try to avoid him."

Charles Teeters (Mr. Teeters), one of the two undercover police officers who followed Mr. Madden, testified that the unmarked pick-up truck was "[a] few car lengths" behind Mr. Madden when Mr. Madden made the U-turn on the Warford Street exit ramp. Mr. Teeters testified that he followed Mr. Madden "a few yards up the ramp," and that he did not see Mr. Hampton's vehicle until "the time of impact . . . . [i]t may have been a fraction of a second before impact." Mr. Teeters also testified, "[a]t no point did this individual, in my opinion, know that the police were following him. There is no blue lights. There is no siren. There is no knowledge that the individuals behind him were police officers." It is undisputed, moreover, that the unmarked, mid-1990's pick-up truck was not equipped with either sirens or emergency lights, and that the undercover officers were in plain clothes.

The trial court found that "[i]t was solely Mr. Madden's plan, and his ultimate decision, to make the u-turn to travel up the off ramp, before spotting" the unmarked police vehicle. The trial court stated, Mr. "Madden testified that he was unaware that he was traveling the wrong direction on the ramp," and that "he thought he had lost the pick-up, intended to flee back to Arkansas, decided to make a u-turn to return to Arkansas on I-40/240, made the turn and collided with [Mr.] Hampton." The trial court also noted that Mr. Madden "admitted that he had consumed drugs that morning on the way to Memphis, an hour or so before this event." With respect to whether Mr. Madden traveled faster because he realized the pick-up truck was behind him, the trial court found this suggestion "not believable, in light of all the officers' testimony and the physical evidence." There is no clear and convincing evidence in the record to contradict the trial court's findings insofar as they are based on credibility, and the evidence does not preponderate against the trial court's factual findings with respect to causation.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. It is unnecessary for us to address the remaining issues raised in Mr. Hampton's brief in light of our

disposition of this matter. Costs of this appeal are taxed to the Appellant, Tommie Hampton, and his surety, for which execution may issue if necessary.


_____
DAVID R. FARMER, JUDGE