IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 16, 2004 Session

**ESTATE OF LISA DUNCAN, BY AND THROUGH  EDWARD HUMAN,
PERSONAL REPRESENTATIVE. v. STATE OF TENNESSEE**

**A Direct Appeal from the Tennessee Claims Commission
No. 20300446     The Honorable W. R. Baker, Commissioner**

_____

**No. M2003-01105-COA-R3-CV - Filed May 26, 2004**

_____

This case involves the death of a passenger who was involved in a high speed police chase. The Tennessee Claims Commission granted summary judgment to the State and passenger's personal representative appealed, primarily on the ground that the Claims Commission erred in granting summary judgment prior to an opportunity to take the discovery deposition of the involved highway patrolman.  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Tennessee Claims Commission
Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Daryl A. Colson and Anthony C. Maxwell of Livingston for Appellant, The Estate of Lisa J. Duncan, by and through Edward Human, Personal Representative

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Sarah T. Chambers, Assistant Attorney General for Appellee, State of Tennessee

**OPINION**

On October 4, 2001, Ms. Lisa J. Duncan ("deceased") was involved in a fatal traffic accident in which she was a passenger on a motorcycle driven by Mr. Charles K. York ("York").  At approximately 6:40 p.m. on the evening of the fourth, the deceased and York were traveling south on Highway 111 in Pickett County, Tennessee, when they were passed by Tennessee Highway Patrolman, Mr. Darryl Winningham ("Winningham"), in the north-bound lane.  Winningham, who

was on duty at the time, stated that he "clocked" the motorcycle traveling 88 m.p.h.,[1] and initiated pursuit. Winningham's affidavit states, with regard to the events of the ensuing chase:

> On October 4, 2001, I was traveling north on Highway 111 on regular patrol when I clocked a motorcycle, traveling south on Highway 111, running 88 mph. A male, later determined to be Charles York, was operating the motorcycle and was accompanied by a female passenger, later determined to be Lisa Duncan.
>
> After measuring the speed of the motorcycle at 88 mph, I turned around to follow the vehicle and managed to catch up to the vehicle after it had turned onto Red Hill [Road]. My lights and siren were activated.
>
> At first, the motorcycle slowed down to approximately 30 mph. and it appeared as if the driver of the motorcycle was going to stop in response to the lights and siren. However, as I pulled to the left of the motorcycle, it crossed the center line and entered the opposing lane of travel, cut off my vehicle, and proceeded to run through a stop sign as it turned left back onto Highway 111.
>
> After the motorcycle re-entered Highway 111, it accelerated to such a high rate of speed that I was unable to reach the vehicle and lost sight of it. I turned my lights off in hopes that the vehicle would decrease its speed.
>
> I continued in the direction of the motorcycle and, realizing I was approaching the busy intersection of Highway 111 and Highway 127, I turned my lights back on to safely get through the intersection to see if I could locate the motorcycle. I pulled onto Highway 127, traveling south, when I saw a large fireball around the curve in the road.
>
> Upon reaching the scene of the accident, I observed the motorcycle on fire and a Dodge pickup truck on the side of the northbound lane of Highway 127. I called the dispatcher and requested the appropriate response teams and approached the vehicles in an attempt to offer assistance.
>
> Subsequent toxicology reports indicated that Charles York's blood alcohol content was .11 and that he had marijuana in his

---

[1] The deceased's estate notes that Winningham initiated a high-speed vehicle chase in response to a "mere" misdemeanor speeding violation.

system. Mr. York also had 10.4 grams of marijuana on his person at the time of the accident.

The time between the point I measured the motorcycle traveling at 88 mph. and the subsequent accident was approximately three minutes.

At no time prior to the accident did I have information suggesting that the passenger on the motorcycle was not a willing participant in Mr. York's actions.

Both before and after I began following the motorcycle, I observed statutory violations such as speeding, attempting to evade arrest, and reckless driving.

Lisa Duncan died as a result of injuries suffered in the head-on collision with the truck.

On October 1, 2002, the Estate of Lisa J. Duncan ( "Appellant"),[2] filed a claim against the State of Tennessee ("State") with the Division of Claims Administration. The complaint, which was subsequently transferred to the Tennessee Claims Commission ("Claims Commission"), alleges, *inter alia*:

The State of Tennessee ("State") is a proper Defendant to this action pursuant to the Tennessee Claims Commission Act, T.C.A. § 9-8-301 *et seq*. At all times pertinent, the State of Tennessee was the employer of Darryl Winningham, and is vicariously liable for the negligent acts and omissions of Winningham under agency principles and respondeat superior.

Darryl Winningham ("Winningham") is a citizen and resident of Tennessee and at all times pertinent was a "state employee" of the State of Tennessee, acting under the color of law in his capacity as a member of the Tennessee Highway Patrol and within the scope of his employment.

*****************************************************

The police chase initiated by Winningham was negligent in that it was initiated and continued without proper regard for the safety of decedent, an innocent third party.

---

[2] The deceased's father, Mr. Edward Human, was named the personal representative of his daughter's estate.

Winningham owed a duty of care to decedent as an innocent third party to discontinue said chase. Winningham breached this duty by continuing the chase, and this breach was the direct and proximate cause of damages to decedent and the Estate of Lisa Duncan.

Winningham violated specific policy/procedures of the Tennessee Department of Safety regarding pursuit driving by continuing the chase under circumstances posing an unreasonable risk of harm to innocent third persons and by failing to terminate the pursuit prior to the collision. Said acts of Winningham constitute gross negligence and/or negligence per se, and were the proximate cause and cause in fact of Lisa Duncan's death and damages to the Estate.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The State of Tennessee is independently liable for the damages set forth herein based on its failure to properly monitor, train and supervise its employee, Winningham. The State of Tennessee was under a duty to properly monitor, train and supervise highway patrol officers, including Winningham, and it failed to do so in breach of said duty. This breach was the proximate cause and cause in fact of the damages alleged herein.

Appellant's complaint seeks compensatory damages for pain and suffering and severe emotional distress suffered by the deceased prior to her death, and further prays for medical and funeral expenses, and "all wrongful death damages allowed under Tennessee law, including loss of parental consortium" for her two minor surviving children.

The State did not file an answer to appellant's complaint, but rather proceeded directly with the filing of a motion for summary judgment on January 29, 2003, alleging as grounds that the estate's complaint was barred by T.C.A. § 55-8-108. On March 17, 2003, appellant filed a response to the State's motion, averring that summary judgment was not appropriate for the following reasons:

The Claimant has not been afforded the opportunity to cross-examine Trooper Winningham by deposition about the facts in the Claim, the statements in his Affidavit, or the manner in which he was monitored, trained and supervised by Defendant as his employer. The Affidavit contains hearsay (information from dispatcher, results of toxicology reports), and certain items of direct and circumstantial evidence (video of subject pursuit, type and condition of radar gun used to measure speed, Tennessee Department of Safety-General Order No. 411 re: Pursuit Driving) have not yet been reviewed with Trooper

Winningham or presented to an expert witness for consideration. [Tennessee Rule of Civil Procedure] 56.07 allows for denial of summary judgment or an order of continuance to permit affidavits, depositions or other discovery to be had when a party shows that it cannot present by affidavit[,] facts essential to justify the opposition. Such is the case at hand, and summary judgment is not appropriate and should be denied to allow further discovery.

Also, this same day, appellant filed a statement of material facts in dispute, alleging that the following facts were in issue: (1) whether Winningham acted reasonably in his pursuit of York and the deceased; (2) whether Winningham violated department policy in "conducting" pursuit; and (3) whether the deceased was an innocent third party.

On April 10, 2003, the Claims Commission filed an order granting the State's motion for summary judgment, stating in pertinent part:

In this claim the claimant has filed a statement of facts which the estate says are in material dispute; each one of these three disputed facts is supported by a citation to paragraph 7 of the affidavit by the claimant's lawyer. That paragraph says, "That from reviewing the video tape involving this pursuit, it appears that conflicts in testimony exist and further that there is a good faith basis to claim that Lisa Duncan is a[n] innocent third party." But the claimant does not submit a copy of that video tape for this Commission to review, does not describe what it shows, and does not specify what any conflict in testimony may be. And as ***Fawcett v. Adreon***, [No. M2000-00940-COA-R3-CV, 2001 WL 950159, at *4 (Tenn. Ct. App. Aug. 21, 2001)] ... says, the question of whether Lisa Duncan is "a[n] innocent third party" is not a material question; also it is not material whether the trooper acted reasonably in his pursuit of the motorcycle. And besides, the claimant does not say what the "good faith basis" is for claiming Lisa Duncan to have been "a[n] innocent third party." The claimant does not quote, cite, nor give the contents of any Safety Department policy which the estate says the trooper violated, does not say how he violated it, and does not show whether (and, if so, how) such a violation was material. The claimant has not asserted any particular shortcomings about the way the trooper was "monitored, trained and supervised" by the State.... As the State says in its reply, "Case law is clear that 'third party' status has only been given to individuals who were <u>not</u> in a vehicle with a fleeing suspect..." Etc.

The claimant has not carried its burden of showing specific material disputed facts in this claim. It is not material whether Lisa

Duncan was an innocent third party because ***Fawcett v. Adreon***, No. M2000-00940-COA-R3-CV, 2001 WL 950159, at *4 (Tenn. Ct. App. Aug. 21, 2001) says, "[in the absence of information to the contrary,] a police officer can reasonably [assume] that a passenger [in the fleeing vehicle is] engaged in a common criminal activity with the driver and would therefore be a suspected violator of the law under Section 55-8-108(e)... Under these circumstances, we conclude that ... the [State] cannot be held liable for her death, even if the police officer's decision to commence or continue the chase was negligent." It is not material whether the trooper acted reasonably in his pursuit of the motorcycle. And it is not material whether the trooper violated Safety Department policy in conducting this pursuit; besides, neither the claimant's statement of facts in material dispute, nor the affidavit on which that statement is based, nor the complaint itself specifies what Safety Department policy the trooper is said to have violated.

(emphasis in original).

Appellant filed a timely notice of appeal and, on May 9, 2003, filed a motion to alter or amend the Claims Commission's order granting summary judgment in favor of the State, averring that appellant "is entitled to take the discovery deposition of Trooper Winningham and the submit this matter for further review by the Court for entry of summary judgment or setting of a trial date and denial of summary judgment." In support of its motion, appellant apparently referred to, but did not file, a videotape of the October 4, 2001 chase and a copy of General Order No. 411, Pursuit Driving, neither of which were included in the record on appeal. No ruling or order from the Claims Commission on appellant's motion to alter or amend is included in the record.[3]

Appellant presents several issues for review, which we restate as whether the Claims Commission erred in granting summary judgment in favor of the State.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. ***See*** Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id***. In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

---

[3] A notice of appeal of the Claims Commission final judgment was filed May 6, 2003, and the motion to alter or amend was filed May 9, 2003. As a general proposition, the timely filing of a notice of appeal from a trial court judgment or order deprives the trial court of further jurisdiction in the matter. ***Glover v. Glover***, No. E2002-01690-COA-R3-C, 2003 WL 465606 (Tenn. Ct. App. Feb. 25, 2003). The parties apparently concede that the trial court properly did not consider the motion to alter or amend.

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The State relies upon the provisions of T.C.A. § 55-8-108 (Supp. 2003), as applied in this Court's decision in *Fawcett v. Adreon*, No. M2000-00940-COA-R3-CV, 2001 WL 950159 (Tenn. Ct. App. Aug. 21, 2001).

T.C.A. § 55-8-108 (Supp. 2003) states in pertinent part:

(a) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b)(1) A driver of an authorized emergency vehicle operating such vehicle in accordance with the provisions of subsection (a) may:

(A) Park or stand, notwithstanding other provisions of this chapter which regulate parking or standing;

(B) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(C) Exceed the speed limits so long as life or property is not thereby endangered; and

(D) Disregard regulations governing direction of movement or turning in specified directions.

(2) The provisions of subdivision (b)(1) shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

(c)(1) The exemptions granted under subsection (b) to a driver of an authorized emergency vehicle shall only apply when such vehicle is making use of audible and visual signals meeting the requirements of the applicable laws of this state, except that while parked or standing, an authorized emergency vehicle shall only be required to make use of visual signals meeting the requirements of the applicable laws of this state.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(e) ***Notwithstanding the requirement of this section that drivers of authorized emergency vehicles exercise due regard for the safety of all persons, no municipality or county nor the state or any of its political subdivisions, nor their officers or employees, shall be liable for any injury proximately or indirectly caused to an actual or suspected violator of a law or ordinance who is fleeing pursuit by law enforcement personnel***. The fact that law enforcement personnel pursue an actual or suspected violator of a law or ordinance who flees from such pursuit shall not render the law enforcement personnel, or the employers of such personnel, liable for injuries to a third party proximately caused by the fleeing party unless the conduct of the law enforcement personnel was negligent and such negligence was a proximate cause of the injuries to the third party.

(emphasis added).

Although *Fawcett* involved a suit under the Governmental Tort Liability Act, rather than a suit against the State under the state claims act, the facts are similar to the case at bar. In *Fawcett*, the father of a deceased passenger filed an action against the defendant driver and the City of Franklin, Tennessee "for negligence resulting in the wrongful death of his teenage daughter, Danielle Lynn Fawcett ("Fawcett")." *Fawcett*, 2001 WL 950159 at \*1. On November 11, 1994, Fawcett was the passenger in a car driven by the defendant, Jarrod Adreon ("Adreon") along Highway 96 in Franklin, Tennessee. *Id*. Officer Stephen Sullivan ("Officer Sullivan") of the Franklin police department was on duty that night and overheard a radio report of a "race" between the defendant and another driver on nearby Interstate 65. *Id*. From his position off of Interstate 65, Officer

Sullivan witnessed the two vehicles exit the interstate and travel west along Highway 96. *Id*. The court noted that "Officer Sullivan paced the cars traveling at 79 miles per hour on Highway 96, where the posted speed limit is 40 miles per hour. Officer Sullivan then illuminated his blue lights. *Id.* When Officer Sullivan illuminated his blue lights, Adreon accelerated and attempted to get away." *Id*. Officer Sullivan continued his high-speed pursuit of the defendant's car into a construction zone where Adreon eventually lost control and flipped his vehicle. *Id*. at *2. Fawcett died as a result of the injuries she suffered in the accident. *Id*.

The City of Franklin filed a motion for summary judgment in response to plaintiff's complaint. *Id*. The trial court granted the City's motion on grounds that "there was no disputing the fact that [the passenger] was not an 'innocent third party,' and that this precluded [her father] from suing the city for negligence." *Id*. On appeal, this Court considered the "central issue" of whether "the passenger in a vehicle involved in a high speed police chase is a "third party" under [Tennessee Code Annotated] Section 55-8-108(e)," and would thereby be entitled to recover for injuries or damages proximately caused by the negligent conduct of law enforcement personnel. *Id*. at *4. The plaintiff relied upon *Haynes v. Hamilton County*, 883 S.W.2d 606 (Tenn. 1994), a case involving a high speed chase with traffic violators resulting in injuries to three occupants of a vehicle not involved in the high speed pursuit. The *Fawcett* Court, ruling on the central issue in the case, said:

> Since the injured parties in *Haynes* were the occupants of a vehicle not involved in the high speed pursuit, *Haynes* does not address the central issue in this case, namely, whether the passenger in a vehicle involved in a high speed police chase is a "third party" under Section 55-8-108(e). The parties have not cited to this Court a reported decision which directly addresses this issue, nor has our research located such a case. The language of the statute does not indicate whether a passenger in a fleeing vehicle would be considered a "suspected violator" or a "third party."
>
> The *Haynes* Court noted that "police officers have a duty to apprehend law violators and ... the decision to commence or continue pursuit of a fleeing suspect is, by necessity, made rapidly." *Haynes v. Hamilton County*, 883 S.W.2d 606, 611 (Tenn. 1994). The split-second decision of whether to chase a fleeing vehicle must at times be made with little or no information about the driver or the passenger. Under the analysis urged by [plaintiff], law enforcement personnel would be constrained against chasing any fleeing vehicle with a passenger, unless the law enforcement officer had affirmative information indicating that the passenger had violated a law. Such a requirement unreasonably hamstrings law enforcement personnel in the performance of their overall obligation "to protect the public." *Haynes*, 883 S.W.2d at 611. In addition, it must be noted that Section 55-8-108(e) does not use the term "driver" of a fleeing

vehicle; rather, the statute refers to "an actual or suspected violator of a law or ordinance who flees...."

> ***We hold that, in the absence of information to the contrary, a police officer can reasonably assume that the passenger in the fleeing vehicle is engaged in a common criminal activity with the driver and would therefore be a suspected violator of the law under Section 55-8-108(e).*** If the passenger in a fleeing vehicle is a "suspected violator" and not a "third party," a municipality cannot be held liable for an injury to such a passenger resulting from a high speed police chase. In this case, while there is some dispute as to whether Fawcett was awake during the chase, there were no facts that would have made it unreasonable for the police officer to assume Fawcett was engaged in a common criminal activity with the driver, Adreon. Under these circumstances, we conclude that Fawcett must be deemed a "suspected violator" under the statute, and the City cannot be held liable for her death, even if the police officer's decision to commence or continue the chase was negligent. The trial court's decision granting summary judgment to the City is affirmed on this basis.

*Fawcett*, 2001 WL 950159 at *4 (emphasis added).

The Claims Commission's order granting the summary judgment motion sets out quite explicitly the lack of proof on the part of the appellant in opposition to the motion for summary judgment. The appellant takes the position that it should be allowed to conduct discovery and that the failure of the trial court to allow it to conduct this discovery was error and requires a reversal. Proceedings before the Tennessee Claims Commission are conducted pursuant to the Rules of the Tennessee Rules of Civil Procedure. *See* T.C.A. § 9-8-403(a)(1) (Supp. 2003). Rule 30, Tenn. R. Civ. P., sets out in detail the procedure for taking depositions. We have no quarrel with appellant's reliance upon *Conger v. Gowder*, No. E2000-01584-COA-R3-CV, 2001 WL 301155 (Tenn. Ct. App. Mar. 29, 2001), which holds that the plaintiff "has the right to test the defendant's supporting affidavits by careful cross-examination during a discovery deposition." *Id*. at *6. However, in the instant case, there is nothing in the record to suggest that the appellant was not allowed to conduct discovery. The motion for summary judgment was filed on January 29, 2003, and appellant filed a response thereto March 17, 2003, stating that it should be allowed to conduct discovery. The order granting summary judge was filed April 10, 2003. Nevertheless, the record does not indicate any notice for a deposition or any other type of discovery instituted or commenced by the appellant. In fact, if the appellant had attempted to conduct discovery and the Claims Commission had not allowed such discovery, that would be a different case. Under the circumstances of this case, and the record before us, appellant simply did not present evidence that would constitute material issues of fact.

Accordingly, the order of the Claims Commission granting summary judgment to the defendant is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Estate of Lisa Duncan, by and through

Edward Human, Personal Representative, and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.