IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 24, 2022 Session

**STATE OF TENNESSEE v. GARET MYERS**

**Appeal from the Criminal Court for Hawkins County
No. CC-19-CR-136  Alex E. Pearson, Presiding Judge**

_____

**No. E2021-00841-CCA-R3-CD**

_____

A jury convicted the Defendant, Garet Myers, of evading arrest in a motor vehicle, a Class E felony; reckless endangerment, a Class A misdemeanor; speeding, a Class C misdemeanor; and driving without a license, a Class B misdemeanor.  The trial court sentenced him to an effective sentence of two years, with thirty days to be served in confinement and the remainder on probation.  The Defendant appeals, challenging the sufficiency of the evidence, the court's refusal to approve the Defendant's request for a special jury instruction, the exclusion of evidence, and the trial court's denial of judicial diversion.  After a thorough review of the record, the parties' briefs, oral argument, and the applicable law, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

Phillip L. Boyd, Rogersville, Tennessee, for the Appellant, Garet Myers.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Amy Hinkle, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

    The Defendant was driving a motorcycle with a passenger seated behind him when Officer Joshua Byrd of the Rogersville Police Department activated his emergency

equipment. The Defendant failed to stop and led Officer Byrd on a high-speed chase which ultimately resulted in the ejection of the passenger, who sustained knee injuries. The Defendant was charged with felony evading arrest in a motor vehicle, reckless aggravated assault, speeding, violation of the financial responsibility law, and driving without a license for the type or class of vehicle being driven. At trial, the Defendant argued that Officer Byrd did not have probable cause to initiate a seizure, that Officer Byrd behaved inappropriately in engaging in a high-speed chase, and that the Defendant was forced to engage in the chase because the police vehicle was following him too closely.

The evidence at trial established that the victim of the reckless aggravated assault charge, Ms. Shyanne Golden, met the Defendant through social media, and the two planned to go on a dinner date on April 5, 2019. The victim arrived at the Defendant's apartment, and when the Defendant suggested that they ride on his friend's motorcycle, the victim agreed. It was dusk when they departed.

Officer Byrd lived in the same apartment complex as the Defendant, and he was leaving his home when he observed the Defendant driving a motorcycle down the road. The Defendant passed two stop signs between the apartment complex and the highway. The Defendant acknowledged that he came to a "rolling stop" at the first stop sign, although he asserted he came to a complete stop at the second. Officer Byrd testified that the Defendant did not come to a complete stop at either sign, and the victim testified generally that she noticed the Defendant was not coming to a complete stop.

Officer Byrd decided to follow the Defendant's vehicle onto the highway. According to Officer Byrd, by "pacing" the Defendant's vehicle, he was able to determine it was traveling at 81 miles per hour in a zone where the speed limit was 55 miles per hour. He testified that, after making this determination, he turned on his emergency equipment, including the lights and siren.

The victim testified that the Defendant sped up very quickly after entering the highway. Asked on cross-examination if the officer turned on the blue lights after the Defendant failed to stop at the stop sign, she said, "I think so. Yes." Asked again, she said, "I think. I'm not sure." The victim needed a break to compose herself, and she later testified that the blue lights came on after she noticed the Defendant speeding on the highway.

The Defendant denied that he was speeding when the blue lights were activated. He stated that he was initially "just riding with traffic" and that he could see from Officer Byrd's headlights that a car was following him closely. He stated he was not speeding when Officer Byrd activated the lights, noting that he was aware he did not have a license

- 2 -

for driving a motorcycle and that he did not want to give law enforcement a reason to stop him. He elaborated that he was driving 60 to 65 miles per hour when the lights were activated. He denied hearing a siren.

The Defendant, Officer Byrd, and the victim all testified that the Defendant did not stop his vehicle when the emergency equipment was activated but instead sped up to evade Officer Byrd. The Defendant described this as a "dumb mistake" prompted by fear. He testified that Officer Byrd was "right there on me" and that he sped up in part because the patrol vehicle was following him so closely that the distance seemed unsafe.

Officer Byrd testified that he was unaware that the Defendant had a passenger. According to Officer Byrd, the Defendant's motorcycle was at one point traveling at approximately 130 miles per hour, a speed which Officer Byrd confirmed with his speedometer and radar. He agreed that he did not "lock" the speed on his radar. The victim at first testified that she could see the speedometer but could not recall what speed was registering. However, she later testified that she recalled looking down and seeing the speedometer at 115 miles per hour on one occasion. She testified that this occurred prior to Officer Byrd activating his blue lights. The Defendant agreed that he sped up in an effort to avoid Officer Byrd, but he did not know how fast he was traveling.

Ms. Lela Susan Carpenter and Mr. Joe Buell were driving in the "slow" lane of the highway when the Defendant, with Officer Byrd in pursuit, passed them. Ms. Carpenter stated that the vehicles were going over 60 or 70 miles per hour, and that "the police car was just right there on the motorcycle" elaborating that Officer Byrd was following "too close[ly]," possibly within ten feet. The road was curvy, and she felt if the Defendant made a "bobble," Officer Byrd "would have run over" him. Mr. Buell agreed that the police car was "right behind" the Defendant, although his estimate was that Officer Byrd was fifty or seventy feet behind the motorcycle. Mr. Buell told Ms. Carpenter, "Dead or alive, he's going to get him."

The Defendant left Highway 11 West to travel on Old Highway 11 West. The victim testified that she was in fear for her life and tried to get the Defendant to yield to police by hitting his back and screaming at him to let her off the motorcycle. The victim testified that the Defendant slowed down along a river but did not come to a complete stop and was not traveling slowly enough that she could safely disembark. She stated that the Defendant pulled off to the side of the road near an embankment and that she was afraid she would fall in the water and did not get off the motorcycle. She responded in the affirmative when asked, "[Y]ou chose not to do that even though he was — he was — he was stopped?" On redirect examination, she clarified that the Defendant did not come to a complete stop.

- 3 -

Officer Byrd likewise testified that on Old Highway 11 West, the Defendant slowed down to approximately ten miles per hour but did not stop. Officer Byrd became aware that there was a passenger on the motorcycle and saw the passenger "beating on the back of the driver."

The Defendant denied that the victim was signaling him to stop, instead testifying that he stopped the vehicle because he did not want to endanger her. According to the Defendant, he came to a complete stop three or four feet from the embankment, and the victim could have safely disembarked but refused to do so.

At this point, Officer Byrd's vehicle caught up to the Defendant's motorcycle. The Defendant testified that the vehicle approached very fast and came very close and that he got scared and moved his motorcycle forward to avoid being hit. The victim and Officer Byrd testified that when Officer Byrd pulled up, the Defendant once again sped away. The Defendant approached an intersection and ran off the left side of the road into the ditch. The motorcycle became airborne and struck a road sign, and the victim was ejected from the motorcycle and landed in the middle of the road. The victim, on cross-examination, denied that she intentionally dismounted from the motorcycle in the middle of the intersection.

Officer Byrd testified that the Defendant came to a stop when the victim was ejected but that he saw the Defendant downshift, a necessary step prior to acceleration. Officer Byrd detained the Defendant prior to rendering aid to the victim. The Defendant had a license to operate an automobile but did not have a license to operate a motorcycle.

The victim had multiple knee surgeries and was "stuck on the couch" for six to eight weeks, during which time she could not care for her son. She testified that her knee was not completely healed at the time of trial two years after the accident. The victim wore a knee brace at trial and testified that she sometimes wore the brace to her job in a grocery store. The Defendant introduced two photographs, and the victim testified that in one photograph, she had taken the brace off and placed it on the back seat of the vehicle in order to pose for the photograph. She testified that in the other photograph, she was wearing the brace, noting it was just visible at the bottom of the photograph. The victim agreed that she had told her father and her best friend that she did not wish to prosecute the Defendant.

On cross-examination, Officer Byrd denied enjoying high-speed car chases, although he acknowledged that he had been involved in other high-speed chases. He stated that backup was called during the chase, but could not recall the circumstances of calling backup. He was unable to get the motorcycle's license plate number, which was displayed on a temporary tag, in lieu of engaging in a chase. He agreed that he himself

was traveling 130 miles per hour while attempting to catch the Defendant and that he did not stop the chase. The Rogersville Police Department policy left terminating a pursuit to the officer's discretion. Officer Byrd acknowledged he was outside city limits at one point. Officer Byrd agreed that he lived in the same apartment complex as the Defendant, but he stated he did not recognize the Defendant until the Defendant removed his helmet after being detained. He agreed that the Defendant was not under the influence of intoxicants and that the Defendant had no prior record of criminal offenses.

The Defendant requested the trial court to give a special instruction to the jury. The court agreed to instruct the jury that a motorcycle approaching an intersection controlled by a signal which uses a vehicle detection device may proceed through the intersection after a full stop when the device is inoperative due to the size of the motorcycle.[1] *See* T.C.A. § 55-8-110(b). The Defendant requested, as part of the instruction, a statement that the jury must determine whether the Defendant committed an offense by failing to stop completely at the stop sign and whether the pursuit was justified on this basis. He also requested, as part of the special instruction, a statement that an officer must immediately terminate a pursuit if the pursuit endangers the general public, the suspect and the officer. When the Defendant was unable to produce any legal authority to support his position, the trial court denied the request.

After the Defendant sought to admit evidence that his insurance paid the victim $100,000 as a settlement in a civil suit, the State dismissed the count charging violation of the financial responsibility law. The trial court excluded the settlement check from evidence. The jury convicted the Defendant of felony evading arrest in a motor vehicle; misdemeanor reckless endangerment as a lesser included offense of reckless aggravated assault; speeding; and driving without a license for the type or class of vehicle being driven, and it imposed fines for the offenses.

At sentencing, the State introduced evidence that the Defendant had three speeding tickets prior to the offenses and one speeding ticket and one ticket for a seat belt violation after the offenses. The trial court found as mitigation that the Defendant's criminal record consisted only of the instant offenses and a few traffic infractions. The court rejected the Defendant's argument that the victim's desire not to prosecute was mitigating, noting that the felony offense was committed against the State and that the victim was only a victim in the misdemeanor reckless endangerment offense. The trial

---

[1] There was no testimony at trial that the motorcycle traveled through an intersection with a traffic light equipped with vehicle detection sensor. The trial court noted that it was including the statutory law from this section of the Code because defense counsel had referenced the provision during voir dire and the court wanted the jury to have a correct statement of that law, "which is different than what was used in your voir dire."

court rejected the Defendant's argument that Officer Byrd provoked the Defendant into engaging in a high-speed chase, that this was grounds tending to excuse the Defendant's conduct, or that this amounted to such unusual circumstances that it was unlike he had a sustained intent to violate the law. *See* T.C.A. § 40-35-113(2), (3), (11). The court found that the Defendant's stable employment and subsequent marriage and fatherhood were favorable circumstances but did not rise to the level of a mitigating circumstance. *See* T.C.A. § 40-35-113(13). The court found as enhancement that the Defendant had no hesitation about committing a crime where the risk to human life was high. *See* T.C.A. § 40-35-114(10). The court noted that under Tennessee Code Annotated section 39-16-603, it was required to impose a minimum thirty-day period of confinement and a mandatory suspension of the Defendant's license for at least six months. For the felony evading arrest conviction, the trial court sentenced the Defendant to two years, with the statutory minimum of thirty days to be served in confinement and the remainder on probation. The Defendant's license was revoked for one year. He was sentenced to eleven months and twenty-nine days for the misdemeanor reckless endangerment, with thirty days in confinement and the remainder on probation. He received a thirty-day suspended sentence for speeding and a six-month suspended sentence for driving without a license. The sentences were to be served concurrently.

The trial court denied the Defendant's request for judicial diversion. In doing so, it found that the Defendant was amenable to correction and that his criminal record, social history, and physical and mental state weighed in favor of diversion. However, the court found that the circumstances of the offense weighed against granting diversion, noting that the Defendant not only fled police but engaged in a high-speed chase on a motorcycle which could easily have led to either his death or that of the victim of the reckless endangerment conviction. The trial court also found that the crime was a serious one, as evinced by the mandatory period of incarceration, and that denial of diversion was necessary for deterrence both of the public and of the Defendant, who had engaged in the dangerous behavior without any real cause. The court found that while diversion might be in the Defendant's best interest, it would not be in the public's overall interest because it "would send a message" that there would be no repercussions for fleeing law enforcement and injuring an innocent victim.

The trial court denied the Defendant's motion for a new trial, concluding that the evidence was sufficient, that the jury instructions were correct, and that the settlement check to the victim was not relevant. The Defendant appeals.

# ANALYSIS

## I. Sufficiency of the Evidence

On appeal, the Defendant challenges his conviction for felony evading arrest on the basis that there was no valid underlying arrest, his conviction for reckless endangerment on the basis that his actions were merely negligent, and his conviction for speeding based on conflicting evidence. We conclude that the evidence is sufficient to uphold the convictions.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The Defendant also challenges the denial of his motion for judgment of acquittal. "The standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction." *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). A motion for judgment of acquittal is waived if the defendant introduces proof after making the motion, and the appellate court merely analyzes the sufficiency of all evidence. *Finch v. State*, 226 S.W.3d 307, 316-17 (Tenn. 2007). In this case, the Defendant introduced proof after the State rested its case, and accordingly, the Defendant's challenge is simply one to the sufficiency of the evidence. The Defendant also asserts that the court erred by

affirming the verdicts as thirteenth juror. *See* Tenn. R. Crim. P. 33. His argument essentially urges us to conclude that "the jury verdicts were against the weight of the evidence." However, an appellate court, while it may assess the sufficiency of the evidence, may not reweigh the evidence. *State v. Stephens*, 521 S.W.3d 718, 727 (Tenn. 2017) (noting that the trial court may reweigh the evidence as thirteenth juror but that "'[a]ppellate courts are ill-suited ... to assess whether the verdict is supported by the weight and credibility of the evidence'" (quoting *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995))). Accordingly, we analyze the challenges as challenges to the sufficiency of the evidence.

The Defendant was convicted of felony evading arrest. The statutory provision defining the offense provides:

> (b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.
> (2) It is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful.
> (3)(A) Except as provided in subdivision (b)(3)(B), a violation of this subsection (b) is a Class E felony and shall be punished by confinement for not less than thirty (30) days.

T.C.A. § 39-16-603(b) (2019).[2]

The Defendant argues that because the State did not charge the Defendant with failure to stop at a stop sign, there was no proof of an "underlying crime." We interpret this as a claim that the attempted arrest was unlawful. *See* T.C.A. § 39-16-603(b)(2). The Defendant cites to two cases addressing the offense of misdemeanor evading arrest, which, as pertinent here, makes it unlawful to flee a law enforcement officer if the accused knows the officer is attempting to arrest the accused. T.C.A. § 39-16-603(a)(1). In *State v. Holbrooks*, this court concluded that the evidence was insufficient to sustain a conviction for misdemeanor evading arrest when the defendant, without apparent cause, spontaneously began to run upon the approach of an officer. 983 S.W.2d 697, 702-03 (Tenn. Crim. App. 1998). This court concluded that there was no evidence that the defendant knew that the officer, who had no probable cause to believe the defendant was committing a crime, was attempting to arrest him at the time he fled. *Id. Holbrooks* is

---

[2] The Defendant was not charged with the Class D felony, which would have required the State to prove that "the flight or attempt to elude creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties." T.C.A. § 39-16-603(b)(3)(B).

clearly inapposite to the case on appeal, where Officer Byrd observed the Defendant fail to stop at two stop signs, observed him traveling 81 miles per hour in a zone where the speed limit was 55 miles per hour, and activated the patrol vehicle's emergency equipment, which the Defendant acknowledged observing, only after confirming the Defendant was speeding.

The Defendant also cites to *United States v. Howard*, where a federal court examined whether the police had probable cause to arrest the defendant, who was on foot at the time he was arrested, for misdemeanor evading arrest under Tennessee Code Annotated section 39-16-603(a). 423 F. Supp. 3d 493, 499-501 (M.D. Tenn. 2019). In *Howard*, the defendant was a mere passenger in a vehicle stopped for a traffic infraction, and he fled the stop on foot. *Id.* at 501. The federal court, distinguishing between a brief detention and an arrest, concluded that law enforcement had no probable cause to arrest the defendant at the time he fled. *Id.*

Felony evading arrest makes it unlawful to flee or attempt to elude law enforcement with a motor vehicle on a road "after having received any signal from the officer to bring the vehicle to a stop." The Defendant's own testimony established that he was operating a motor vehicle on a highway and that he intentionally fled Officer Byrd after having received a signal to bring his vehicle to a stop. T.C.A. § 55-1-103(c). It is a defense to the crime that the attempted arrest was unlawful. T.C.A. § 39-16-603(b)(2). However, the State introduced evidence that the speed limit was 55 and that the Defendant was traveling at 81 or 115 miles per hour when the blue lights were activated. The evidence at trial, seen in the light most favorable to the State, established that the Defendant here, unlike the defendant who was a mere passenger in *Howard*, had committed traffic offenses prior to law enforcement's attempted seizure of the vehicle. Accordingly, it was not unlawful for Officer Byrd to issue a signal for the Defendant to bring his vehicle to a stop. *See* T.C.A. 55-8-152 (2019); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (holding that, prior to turning on the blue lights, an officer must have reasonable suspicion, supported by specific and articulable facts, that the defendant has committed or was about to commit a criminal offense). Because the State introduced evidence from which the jury could have found that the Defendant's conduct satisfied the elements of the offense and that the attempted arrest was not unlawful, the evidence was sufficient to support the verdict.

The Defendant next asserts that his reckless endangerment conviction is not supported by sufficient evidence because the proof established "ordinary negligence." "A person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). Statute defines recklessness:

(c) "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

T.C.A. § 39-11-302(c). In challenging this conviction, the Defendant asserts that the victim refused to get off the motorcycle and that she did not wish to prosecute the Defendant. The Defendant does not explain how the victim's alleged refusal to get off — which we note was contrary to both the victim's and Officer Byrd's testimony — or desire not to prosecute the Defendant would bear on the Defendant's mens rea of recklessness, which is the disputed element on appeal. The Defendant asserts that there was no evidence that the Defendant "was speeding or otherwise behaving recklessly at that point in the chase." However, he neglects to account for the fact that, in reviewing the sufficiency of the evidence, we take the evidence in the light most favorable to the State. The evidence, seen in the light most favorable to the State, established that the Defendant refused to stop his motorcycle when Officer Byrd initiated the seizure, instead traveling at speeds in excess of 100 miles per hour on a highway with a speed limit of 55 miles per hour. The Defendant's passenger feared for her life and was beating on his back to get him to let her off the motorcycle, and impartial bystanders observing the chase anticipated a deadly outcome. The Defendant exited the highway and sped along a curvy road, slowing down but ultimately resuming the chase when Officer Byrd caught up to him. We conclude that a rational trier of fact could have found that the Defendant consciously disregarded a substantial and unjustifiable risk and that this disregard constituted a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

The Defendant asserts that there was "no reliable evidence" that he was speeding because Officer Byrd did not introduce the proof of the radar reading and because the victim's testimony was unreliable. However, Officer Byrd testified that the Defendant was traveling at 81 miles per hour when he initiated the traffic stop and thereafter drove as fast as 130 miles per hour. The victim initially testified she could see the speedometer but could not recall the reading, but she later testified that at one point, she looked down and saw that the motorcycle was traveling at 115 miles per hour. *See* T.C.A. § 55-8-152 (2019). The Defendant's own testimony was that he was initially traveling between 60 and 65 miles per hour and that he subsequently sped up to elude Officer Byrd. The Defendant essentially asks us to reweigh the jury's factual finding regarding the rate of speed at which he was traveling, but this court does not reweigh or reevaluate the

evidence. *Smith*, 436 S.W.3d at 764. The Defendant does not challenge his conviction for driving without a license for the type or class of vehicle being driven, and we agree the evidence is also sufficient to support this conviction. *See* T.C.A. §§ 55-50-301(a)(1), -603. We conclude that the evidence is sufficient to support the verdicts.

## II. Jury Instructions

On appeal, the Defendant asserts that the trial court erred in failing to give his requested instructions. We agree with the State that the trial court properly refused to give the instruction.

In addition to the special instruction which the trial court approved, the Defendant requested an instruction that the jury must "consider the fact of (1) whether [the Defendant] had committed a crime by rolling through the stop sign as alleged by the officer and (2) whether the ensuing pursuit was justified." The Defendant is mistaken in his assertion that the court failed to instruct the jury that law enforcement must have a "justifiable reason for arrest for an underlying crime." Indeed, the court instructed the jury:

> It is a defense to prosecution for this offense that the attempted arrest was unlawful. If evidence is introduced supporting this defense, the state has the burden of proving beyond a reasonable doubt that the attempted arrest was lawful. If you find that the attempted arrest was unlawful, or if you have a reasonable doubt thereof, you must find the defendant not guilty.

The trial court's instruction regarding the attempted arrest by a law enforcement officer properly tracked the statutory language. T.C.A. § 39-16-603(b)(2) ("It is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful."). The trial court was not required to use the Defendant's much more narrow instruction, which would have defined the underlying crime as the "rolling stop" despite the State's evidence that Officer Byrd turned on his emergency equipment only after the Defendant began speeding and which called for a vague determination of whether the pursuit was "justified" rather than whether the arrest was unlawful. Indeed, the Defendant's proposed instruction, unlike the trial court's, does not track the statutory language. The jury received a complete and correct charge, and the Defendant is not entitled to relief regarding this part of the proposed instruction.

The Defendant also asserts that the court erred in not charging the jury that Officer Byrd was required to terminate the pursuit. He proposed an instruction that "during hot pursuit by an officer of the law engaged with a fleeing suspect on a public highway, if the pursuit endangers the general public, the suspect, and the officer, the pursuit must be

immediately terminated for safety concerns." On appeal, he cites a civil case for the proposition that "[t]he general public has a significant interest in not being subjected to unreasonable risks of injury as the police carry out their duties." *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 611 (Tenn. 1994). In *Haynes*, the Tennessee Supreme Court concluded that an officer's decision to commence or continue a high-speed chase may carry liability to a third party injured by the fleeing suspect if the officer's decision was unreasonable. *Id.* *Haynes*, however, offers no insight on the criminal liability of the fleeing suspect. Whether or not an officer's pursuit is ill-judged has no effect on the determination of whether the Defendant has violated the statute regarding felony evading arrest, unless the attempted arrest was unlawful as set out in the trial court's instruction above. As the State notes, *Haynes* does not actually support the Defendant's proposed instruction that an officer is *required* to terminate a dangerous pursuit, and the Defendant presents no other legal authority for the charge. The proposed charge would only relate to a duty imposed on the officer and not to any of the elements of the offenses charged against the Defendant. The trial court properly denied the Defendant's motion.

### III. Exclusion of Insurance Settlement

As part of his sufficiency argument, the Defendant contends that the court erred in excluding evidence of a $100,000 settlement check which the victim received from the Defendant's insurance company, asserting that the court erred in excluding it under Tennessee Rules of Evidence 401, 402, and 403. We address the argument as one challenging the trial court's evidentiary decisions, and we conclude there was no error.

A trial court's decisions regarding the admissibility of evidence are generally reviewed for abuse of discretion. *State v. Parker*, 350 S.W.3d 883, 896-97 (Tenn. 2011). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015).

In order to be admissible, evidence must first be relevant. Tenn. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Prior to the dismissal of the charge regarding violation of the financial responsibility law, the Defendant offered evidence regarding a civil suit and a settlement payment to the victim. The trial court clarified with the Defendant that he was attempting to admit the documents regarding the civil suit to show that he had insurance, and defense counsel noted that the defense was also asking to admit the monetary amount of the

settlement "to point out that … she's been made whole on it." The trial court ruled that the settlement amount was not relevant or admissible. The court took a recess, after which it announced to the jury that the State had been provided with proof that the Defendant carried insurance at the time of the accident and that the State was dismissing that charge.

The Defendant does not articulate on appeal how evidence regarding the monetary value of the insurance settlement made it more or less likely that he engaged in felony evading arrest, that he committed reckless aggravated assault (as charged) on the victim, that he was speeding, or that he was driving without a license permitting him to drive a motorcycle. We conclude that the evidence had no tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable and that the trial court properly excluded it.

## IV. Diversion

The Defendant also challenges the trial court's decision to deny judicial diversion. Judicial diversion is a "legislative largess" granted to certain qualified defendants whereby the judgment of guilt is deferred and the defendant is placed on probation. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014); *see* T.C.A. § 40-35-313(a)(1)(A). If the defendant is successful in completing the probation assigned as part of diversion, the charges will be dismissed and the defendant may seek expungement. T.C.A. § 40-35-313(a)(2), (b). Violation of the probation imposed as a condition of diversion may result in an adjudication of guilt and imposition of a sentence. *Id.*; T.C.A. § 40-35-313(a)(2). "There is no presumption that a defendant is a favorable candidate for judicial diversion." *State v. Dycus*, 456 S.W.3d 918, 929 (Tenn. 2015)

Like other sentencing decisions, the decision to grant or deny diversion is reviewed for an abuse of discretion. *King*, 432 S.W.3d at 324-25. "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Although the deferential standard of review articulated in *Bise* applies to the decision to grant or deny diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history,

- 13 -

(e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (footnote omitted). In addition to considering these factors, the trial court must weigh them against one another and place an explanation of its ruling on the record. *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

If the trial court has adhered to these requirements, the reviewing court merely looks to see whether "any substantial evidence" exists in the record to support the trial court's decision. *Id.* "Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *Id.* at 327. The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *Id.* "'[A] trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration.'" *State v. Walter Townsend*, No. W2015-02415-CCA-R3-CD, 2017 WL 1380002, at *2 (Tenn. Crim. App. Apr. 13, 2017) (quoting *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997)).

The trial court considered the Defendant's amenability to correction, his criminal record, his social history, and his physical and mental health, and found that those factors weighed in favor of diversion. However, the court found that the circumstances of the offense, which exceeded a mere attempt to elude arrest and could easily have led to the death of the Defendant or the victim, weighed against diversion. It also found that considerations of general deterrence weighed against diversion because the offense was a serious one, and that specific deterrence of the Defendant also weighed against diversion because the Defendant had engaged in the risky behavior without provocation and for no reason.

The Defendant asserts that the court's determination regarding deterrence was in error because no evidence regarding general deterrence was introduced in the record. *See State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000) (noting that when probation is denied based on deterrence the record must contain evidence of a need to deter similar crimes within the community, jurisdiction, or state and that incarceration would serve to deter others); *State v. Zeolia*, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The Tennessee

Supreme Court, presented with a similar argument in a case disputing the denial of pretrial diversion, first noted that it would pretermit the issue of whether *Hooper* applied to pretrial diversion as well as probation. Instead, it concluded that there was no error in the failure to include the *Hooper* considerations because the prosecutor "relied upon factors other than the need for deterrence." *State v. Hamilton*, 498 S.W.3d 7, 19 n.7 (Tenn. 2016); *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (concluding that *Hooper* did not apply when the denial of probation was based on multiple factors). The court here likewise relied on the circumstances of the offense as well as the need for deterrence in its decision to deny diversion, and accordingly, *Hooper* does not apply. *Id.*

While we agree with the Defendant (and the trial court) that the Defendant certainly introduced proof that some of the diversionary factors weighed in his favor, the trial court properly considered all of the necessary factors and placed its weighing of the factors on the record. We cannot conclude that the trial court abused its discretion.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE